**THE RIGHT TRIAL LAWYERS**
Mark D. Potter (SBN 166317)
mark@trtl.law
James M. Treglio (SBN 228077)
jimt@trtl.law
Isabel Rose Masanque (SBN 292673)
isabelm@trtl.law
Naomi Butler (SBN 332664)
naomib@trtl.law
1410 E Winding Way, Suite B
Friendswood, Texas 77546
(415) 534-0530
Fax: (888) 422-5191

Counsel for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE MAGLIOCCA, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED HEALTHCARE SERVICES, INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: 2:25-cv-03388-WBS-SCR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Hearing Date: March 30, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5—14th Floor<br><br>Hon. William B. Shubb |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. LEGAL STANDARD ON MOTION TO DISMISS .......... 2

III. LEGAL ARGUMENT .......... 2

A. Plaintiff States a Valid Claim Under the California Invasion of Privacy Act (CIPA). .......... 2

1. Plaintiff Has Statutory Standing Under Penal Code § 637.2 .......... 4

2. The Complaint Adequately Alleges Interception of the "Contents" of a Communication .......... 5

3. UHS's Aiding and Abetting Interpretation Conflicts with § 631(a)'s Plain Language .......... 6

4. Defendant's Website Tracking Tools Qualify as "Pen Registers" Under Penal Code § 638.51 .......... 6

B. Plaintiff States a Plausible Claim Under the Federal Wiretap Act (ECPA) .......... 8

1. Plaintiff Plausibly Alleges Interception and Disclosure of "Contents." .......... 8

2. Plaintiff Alleges UHS's Direct Statutory Liability, Not Aiding-and-Abetting .......... 10

3. UHS's One-Party Consent Defense Does Not Warrant Dismissal Because the Crime–Tort Exception Is Plausibly Alleged .......... 11

C. Plaintiff Plausibly States a Claim Under the California Computer Data Access and Fraud Act, Cal. Penal Code § 502, and UHS's Motion to Dismiss Should Be Denied .......... 13

1. Plaintiff Alleges Cognizable "Damage or Loss" Under § 502 .......... 13

2. Plaintiff Alleges Access "Without Permission." .......... 15

D. Plaintiff Adequately Pleads an Invasion of Privacy Under Article I, Section 1 of the California Constitution .......... 16

1. UHS Engaged in an Affirmative Privacy Intrusion Despite Plaintiff's Voluntary Website Use .......... 17

2. Plaintiff Had a Legally Protected Privacy Interest and a Reasonable Expectation of Privacy in Her Website Activity .......... 18

3. The Alleged Conduct Was a Serious and Highly Offensive Invasion of Privacy .......... 20

V. CONCLUSION ........................................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .......... 2, 9, 13

*AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1180 (E.D. Cal. 2010) .......... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .......... 8, 9, 10, 13

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 14

*Brown v. Mortensen*, 51 Cal. 4th 1052, 1068–70 (2011) .......... 22

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021) .......... 15

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1129 (S.D. Cal. 2023) .......... 3, 6, 9

*Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271–72 (N.D. Cal. 2001) .......... 10

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077–78 (N.D. Cal. 2023) .......... 12

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025) .......... 15

*Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005) .......... 2

*Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .......... 13

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066–67 (9th Cir. 2016) .......... 16

*Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *5 (C.D. Cal. Oct. 27, 2023) .......... 15

*Heiting v. Taro Pharm. U.S.A., Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023) .......... 15

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 289–90 (2009) .......... 20, 21, 23

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935–36 (N.D. Cal. 2015) .......... 9, 14

*In re Facebook Internet Tracking*, 956 F.3d 589, 596–98, 603–06 (9th Cir. 2020) .......... 13, 19, 20, 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 137 (3d Cir. 2015). 3, 5, 9

*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946–47 (N.D. Cal. 2022) . 19, 23

*In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) .......... 20

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) .......... 3, 5

*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) .......... 3, 5, 9

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024–25 (N.D. Cal. 2012) .......... 21

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139–42 (E.D. Cal. 2021) .......... 21

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077–78 (C.D. Cal. 2024) .................... 2, 4, 7

*Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)........ 8, 11

*Popa v. Microsoft Corp.*, 153 F.4th 784, 792–94 (9th Cir. 2025)............................................ 21

*Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 928–31 (C.D. Cal. 2025) ....................... 7

*Rodriguez v. Google LLC*, No. 21-cv-674077, 2025 WL 50425, at *3–4 (N.D. Cal. Jan. 3, 2025) 14

*Shah v. Cap. One Fin. Corp.*, 2025 WL 714252, at *10–11 (N.D. Cal. Mar. 3, 2025) ................. 12

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932–33 (N.D. Cal. 2024) ...................................... 2, 4

*Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ............................................... 11

*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 958–59 (E.D. Cal. 2025) ...................... 3, 6

*Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200–01 (N.D. Cal. 2020)....................... 14, 16

*Yoon v. Meta Platforms, Inc.*, No. 24-cv-02612-NC, 2024 WL 5264041, at *5–6 (N.D. Cal. Dec. 30, 2024)................................................................................................................ 3, 5

**Statutes**

18 U.S.C. § 2510(8) ................................................................................................................. 8, 9

18 U.S.C. § 2511(1)(a) ................................................................................................................. 11

18 U.S.C. § 2511(2)(d) ......................................................................................................... 8, 11, 13

18 U.S.C. § 2520(a)................................................................................................................... 8, 10

Cal. Penal Code § 631(a)............................................................................................................ 3, 6

Cal. Penal Code § 637.2(a).............................................................................................................. 2

## I. INTRODUCTION

Defendant United Healthcare Services, Inc. ("UHS") asks this Court to dismiss this action by recasting it as an attack on commonplace website technologies, but the Complaint pleads covert third-party surveillance and commercialization of users' health-insurance website activity. UHS allegedly embedded third-party tracking and session replay code, including Google Analytics/Ads, Meta/Facebook Pixel, Microsoft Clarity, and Adobe technologies (the "Trackers"), on https://www.uhc.com (the "Website" or "UHC") that installs and operates automatically and invisibly and is activated when a user lands on the Website, capturing and transmitting the user's interactions (including pages/URLs visited, buttons clicked, scroll depth, navigation, and session duration), along with persistent identifiers, device/browser data, and IP-derived location information, to third parties for profiling and targeted advertising. Plaintiff Joanne Magliocca visited the Website to browse health insurance products; UHS's code caused the Trackers to be installed on her browser; UHS used and shared the collected information with third parties to analyze marketing campaigns and conduct targeted advertising; and the effects became apparent when Plaintiff was inundated with ads for United Healthcare and other healthcare companies across the internet and on social media.

UHS's motion improperly asks the Court to resolve factual disputes—such as consent—against Plaintiff at the pleading stage by minimizing what was intercepted and invoking purported disclosures in UHS's online privacy materials. That is not the Rule 12(b)(6) standard: the Court must accept as true Plaintiff's allegations that neither she nor Class members provided prior consent to install or use the Trackers and that UHS acted without a court order, and it must draw all reasonable inferences in Plaintiff's favor. The Complaint pleads facts demonstrating that consent cannot be manufactured after the fact. The Trackers are activated when a user lands on the website and begin capturing and transmitting data immediately, while the user's communications with the Website are still occurring. On these well-pleaded facts, Plaintiff states plausible claims under CIPA, the federal Wiretap Act, CDAFA, and the California Constitution, and UHS's effort to rewrite the pleadings should be rejected.

## II. LEGAL STANDARD ON MOTION TO DISMISS

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. To survive a motion to dismiss, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "requires factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." While "detailed factual allegations" are not required, the complaint must offer more than "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Ashcroft*, 556 U.S. at 678). In applying this standard, the Court must "construe the complaint in the light most favorable to the plaintiff, taking all [her] allegations as true and drawing all reasonable inferences from the complaint in [her] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). The Rule 12(b)(6) posture "does not allow 'dismissals based on a judge's disbelief of a complaint's factual allegations,'" nor may a court "attempt to forecast a plaintiff's likelihood of success on the merits" at the pleading stage. In other words, so long as the complaint's factual allegations (assumed true) articulate a plausible claim for relief, the motion to dismiss must be denied.

## III. LEGAL ARGUMENT

### A. Plaintiff States a Valid Claim Under the California Invasion of Privacy Act (CIPA)

Plaintiff's CIPA claims rest on well-established statutory and factual predicates that the Complaint amply pleads. Defendant's motion fails as a matter of law and fact on each asserted ground. First, § 637.2 confers standing on "any person who has been injured by a violation of [CIPA]" and expressly provides that actual damages are not required. Cal. Penal Code § 637.2(a), (c). Plaintiff plausibly alleges that Defendant's use of third-party tracking code invaded her legally protected privacy interests, which constitutes a cognizable injury for statutory standing. *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932–33 (N.D. Cal. 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077–78 (C.D. Cal. 2024). Defendant's attempt to impose an extra-statutory "concrete injury" requirement is therefore foreclosed by the statute and persuasive authority.

Second, Plaintiff adequately alleges that the tracking tools intercepted the "contents" of her electronic communications under § 631(a). The Ninth Circuit has defined "contents" to mean "'any

information concerning the substance, purport, or meaning of [a] communication.'" *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014). Courts have consistently held that URLs, webpage titles, search queries, and other metadata revealing a user's browsing behavior qualify as such contents. *Yoon v. Meta Platforms, Inc.*, No. 24-cv-02612-NC, 2024 WL 5264041, at *5–6 (N.D. Cal. Dec. 30, 2024); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 137 (3d Cir. 2015). Here, the Complaint alleges that Defendant's trackers captured Plaintiff's search queries and browsing data in real time—information plainly "concerning the substance…of a communication." *In re Zynga Privacy Litig.*, 750 F.3d at 1106–07.

Third, Defendant's contention that it cannot be liable because it merely aided and abetted third parties misreads § 631(a) and is squarely foreclosed by the statute's plain language. Section 631(a) expressly imposes liability on any person who "aids, agrees with, employs, or conspires with" another to unlawfully intercept communications. Cal. Penal Code § 631(a). As *Cousin* explains, construing "aids" to import common law criminal aiding and abetting intent requirements "ignores the 'agrees with, employs, or conspires with' language of the clause." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023). *Tate* applied this interpretation at the pleading stage and rejected the same theory advanced here. *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 958–59 (E.D. Cal. 2025). Taken as true, Plaintiff's allegations that Defendant deliberately selected, deployed, configured, and controlled third-party tracking technologies plausibly establish that Defendant "employ[ed]" and "agree[d] with" third parties to intercept communications within the meaning of § 631(a).

Fourth, Defendant's website tracking scripts record the "dialing, routing, addressing, or signaling information" that § 638.50(b) forbids collecting without a court order. An IP address and persistent device identifiers are quintessential "addressing" data under the statute. Cal. Penal Code § 638.50(b). In *Greenley v. Kochava, Inc.*, the court held that software collecting IP addresses and related routing or addressing information in the ordinary course of internet communications qualifies as a CIPA "pen register." 684 F. Supp. 3d 1024, 1049–50 (S.D. Cal. 2023) (holding that the statute is "specific as to the type of data" but "vague and inclusive as to the form of the collection

tool," and that analysis turns on function rather than form). *Moody v. C2 Educational Systems Inc.* reached the same conclusion, rejecting the argument that § 638.51 is limited to physical devices and holding that website-embedded software recording routing or addressing information plausibly constitutes a pen register at the pleading stage. 742 F. Supp. 3d 1072, 1075–76 (C.D. Cal. 2024). Likewise, *Rodriguez v. Autotrader.com, Inc.* held that allegations involving third-party website tracking software capturing IP addresses and related signaling data sufficiently stated a § 638.51 claim, notwithstanding the defendant's characterization of the tools as routine or necessary for website operation. 762 F. Supp. 3d 921, 928–31 (C.D. Cal. 2025). Each of Defendant's arguments to the contrary is incorrect and foreclosed by controlling law, as detailed below.

**1. Plaintiff Has Statutory Standing Under Penal Code § 637.2**

Defendant contends that Plaintiff lacks statutory standing because she "does not allege facts that show that she suffered any concrete injury" and has "not alleged a privacy injury resulting from UHS's purported conduct." That contention is foreclosed by the text of CIPA and persuasive authority applying it. Penal Code § 637.2(a) authorizes suit by "[a]ny person who has been injured by a violation of this chapter," and § 637.2(c) expressly provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Plaintiff plausibly alleges that Defendant surreptitiously intercepted and captured her electronic communications and identifying signaling information through third-party tracking code without her consent. (Compl. ¶¶ 90–92.).

Federal courts applying CIPA at the pleading stage have rejected the argument that a plaintiff must plead harm beyond the alleged statutory invasion of privacy. See *Shah*, 754 F. Supp. 3d 924, 932–33) (holding plaintiffs adequately alleged statutory standing under § 637.2 based on unauthorized pen-register tracking of IP addressing information without consent, and declining to impose any heightened injury requirement beyond the alleged privacy invasion); *Moody*, 742 F. Supp. 3d 1072, 1077–78 (holding allegations that embedded tracking software collected browser and device data without consent constituted an invasion of privacy sufficient to establish injury in fact and satisfy § 637.2 at the pleading stage). Taken as true, Plaintiff's allegations establish

statutory standing under § 637.2, and Defendant's attempt to impose an extra statutory concrete injury requirement should be rejected.

**2. The Complaint Adequately Alleges Interception of the "Contents" of a Communication**

Section 631(a) prohibits any person from using a device to "read, or learn the contents or meaning of" another's confidential electronic communication, without consent. By its text, this ban extends to any data revealing the "substance, purport, or meaning" of a communication. As the Ninth Circuit has held, "'contents' means 'any information concerning the substance, purport, or meaning of [a] communication.'" *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106. Here, Plaintiff alleges that Defendant's tracking code surreptitiously intercepted her active web communications (e.g., search requests, page clicks, and form submissions) and conveyed them to third parties. Those communications were confidential by law, and the intercepted data plainly describe the substance of her interactions.

A court has held that URL data and related metadata can constitute the contents of a communication. For example, in *Yoon*, plaintiffs alleged that embedded pixels transmitted the titles and URLs of videos viewed by users. The district court squarely found those data to be "content," because they reveal which videos the user actually watched. As that court observed, these communications constitute "contents" because they "provide significant information regarding the user's browsing history and divulge a user's personal interests, queries, and habits…". *Yoon*, 2024 WL 5264041, at *5–6. Similarly, Judge Orrick in *In re Meta Pixel Healthcare Litigation* held that the path and query-string of a URL—which often include page names or search terms—fall within "contents" since they "concern the substance of a communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795; see also *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 137 (if a URL is "part of the substantive information conveyed to the recipient, then by definition it is [content]"). In *Yoon*, the court likewise noted that a video's title, identifying the "specific videos that the user viewed" is content. *Yoon*, 2024 WL 5264041, at *5–6.

These authorities confirm that when a tracker conveys identifying web content (search terms, page titles, form queries, etc.) to a third party, it is intercepting the communication's contents within

§ 631(a). Plaintiff's Complaint alleges exactly that: Defendant's trackers transmitted the web pages Plaintiff viewed and the search queries she entered on Defendant's site to remote servers, in real time (see Compl. ¶¶ 63–66, 90). That information plainly concerns the substance of her communications.

**3. UHS's Aiding and Abetting Interpretation Conflicts with § 631(a)'s Plain Language**

Section 631(a) expressly imposes liability on any person who "aids, agrees with, employs, or conspires with" another to unlawfully intercept communications. Cal. Penal Code § 631(a). In *Cousin*, the court rejected the argument that this language incorporates common-law criminal aiding-and-abetting requirements, explaining that construing "aids" to require heightened *mens rea* "ignores the 'agrees with, employs, or conspires with' language of the clause" and improperly narrows the statute. *Cousin*, 681 F. Supp. 3d 1117, 1130 (declining to graft criminal aiding-and-abetting intent elements onto § 631(a)'s fourth clause and holding that allegations of intentionally procuring and installing third-party interception technology were sufficient at the pleading stage).

*Tate* applied this interpretation on a Rule 12(b)(6) motion and rejected the same theory advanced by UHS here. *Tate*, 762 F. Supp. 3d 949, 958–59 (denying motion to dismiss and holding that § 631(a) does not require pleading common-law aiding and abetting intent where plaintiff alleged that the defendant allowed a third-party vendor access to communications and paid the vendor to perform interception-related services). *Tate* further held that a defendant's status as a participant in the communication does not preclude liability under § 631(a) where the defendant employs or agrees with a third party to perform the interception. *Id*. (holding that § 631(a)'s fourth clause independently reaches parties who facilitate third-party interception). Here, Plaintiff alleges that UHS deliberately selected, deployed, configured, and controlled third party tracking technologies to intercept users' website communications for UHS's commercial benefit. Taken as true, those allegations plausibly state that UHS "employ[ed]" and "agree[d] with" third parties to intercept communications within the meaning of § 631(a), rendering dismissal on Defendant's aiding-and-abetting theory improper under *Tate* and *Cousin*.

**4. Defendant's Website Tracking Tools Qualify as "Pen Registers" Under Penal**

**Code § 638.51**

Finally, Defendant's assertion that its website tracking technologies categorically cannot constitute "pen registers" under California Penal Code § 638.51 is foreclosed by the statute's text and by district court authority applying that text to modern internet technologies. Section 638.50(b) defines a pen register as any "device or process" that records or decodes "dialing, routing, addressing, or signaling information" from an electronic communication, and *Greenley* declined to limit that definition to physical, telephone-era equipment. *Greenley*, 684 F. Supp. 3d 1024, 1049–50 (holding that software-based tracking technology constitutes a pen register where it records and transmits IP addresses and related routing or addressing information, and emphasizing that § 638.50(b) is "specific as to the type of data" but "vague and inclusive as to the form of the collection tool"). At the pleading stage, a plaintiff need only allege facts plausibly showing that a defendant used such a "process" without a court order, which Plaintiff has done by alleging that Defendant's trackers recorded IP addresses and other signaling data and transmitted them to third parties.

*Moody* likewise rejected the contention that § 638.51 applies only to physical devices attached to telephone lines and held that software embedded in a website may qualify as a pen register where it records routing or addressing information from visitors' electronic communications. *Moody*, 742 F. Supp. 3d 1072, 1075–76 (denying motion to dismiss and explaining that the statute's definitions focus on the information collected rather than the technological form). Similarly, *Rodriguez* held that allegations involving third-party website tracking software capturing IP addresses and related signaling data plausibly stated a claim under § 638.51, rejecting the argument that the statute is limited to telephone surveillance or excludes ordinary website analytics. *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 928–31 (C.D. Cal. 2025) (holding that § 638.51 plausibly applies to website tracking software at the pleading stage notwithstanding defendant's characterization of the tools as routine or necessary).

Taken together, *Greenley*, *Moody*, and *Rodriguez* establish that § 638.51 turns on the functional collection of routing or addressing information, not on whether the technology is widespread, commercially routine, or software-based. Because Plaintiff plausibly alleges that

Defendant used a "process" that recorded such information from electronic communications without judicial authorization, Plaintiff has stated a claim under § 638.51, and dismissal is improper.

For all of the above reasons, Plaintiff's CIPA claim should survive the motion to dismiss. Defendant's arguments are foreclosed by the text of the CIPA and by controlling Ninth Circuit and California federal authority, and Plaintiff's Complaint squarely alleges the necessary elements of each CIPA cause of action.

**B. Plaintiff States a Plausible Claim Under the Federal Wiretap Act (ECPA)**

UHS seeks dismissal of Plaintiff's federal Wiretap Act claim by (1) characterizing the intercepted data as non-content "record" information, (2) recasting the claim as an impermissible aiding-and-abetting theory, and (3) invoking ECPA's one-party consent rule. None of those arguments warrants dismissal on the pleadings. Taking the Complaint's allegations as true and drawing reasonable inferences in Plaintiff's favor, Plaintiff has plausibly alleged that UHS embedded third-party tracking technologies that captured and disclosed the substance of users' interactions with UHS's website—i.e., "contents" as defined by statute and interpreted by the Ninth Circuit—and that UHS itself "intercepted, disclosed, [and] intentionally used" those communications within the meaning of the Act. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); 18 U.S.C. § 2510(8); 18 U.S.C. § 2520(a); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). And even where one-party consent could otherwise apply, dismissal is improper because § 2511(2)(d)'s crime–tort exception defeats the consent defense where the interceptor acted with a "criminal or tortious purpose [that is] separate and independent from the [interception]," a fact-intensive issue the Complaint plausibly alleges here. 18 U.S.C. § 2511(2)(d); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Accordingly, UHS's ECPA challenge fails at each step: Plaintiff has pleaded (1) "contents," (2) UHS's direct statutory liability, and (3) facts supporting application of the crime–tort exception.

**1. Plaintiff Plausibly Alleges Interception and Disclosure of "Contents."**

ECPA defines "contents" broadly as "any information concerning the substance, purport, or meaning" of an electronic communication. 18 U.S.C. § 2510(8). The Ninth Circuit likewise explains that, under the ECPA, "contents" are "the intended message conveyed by the communication," and

"do not include record information generated in the course of transmitting the message." *In re Zynga Priv. Litig.*, 750 F.3d at 1106. Accepting the Complaint's allegations as true, Plaintiff alleges far more than the mere transmission of routing or device identifiers. The Complaint alleges that UHS embedded tracking code that "can intercept each page a user visits," including "what buttons they click, how far they scroll on the page, and the length of their session." (Compl. ¶ 22.) Those alleged page visits and interaction data plausibly concern the "substance, purport, or meaning" of the user's communications with UHS's website—what the user is requesting and doing on the site—not merely technical addressing information. 18 U.S.C. § 2510(8).

UHS argues that "basic website browsing activity is record, not content, information," relying on decisions dismissing claims where plaintiffs failed to plausibly allege the divulging of "contents." See, e.g., *In re Zynga Priv. Litig.*, 750 F.3d at 1109; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935–36 (N.D. Cal. 2015). But the question at the pleading stage is whether Plaintiff has plausibly alleged that UHS's technologies captured information "concerning the substance, purport, or meaning" of her communications with the site. 18 U.S.C. § 2510(8); *Bell Atl. Corp.*, 550 U.S. at 570. Here, the Complaint alleges that the trackers captured not only an IP address but also the user's "page visits," "clicks," "scrolls," and "page navigation," and that Meta's pixel tracks "URLs visited" and "domains visited." (Compl. ¶¶ 22, 27, 29, 46.) Consistent with *Zynga*, web addresses can constitute "contents" when they disclose substantive user activity—e.g., where a URL contains information that conveys what the user sought or did. *In re Zynga Priv. Litig.*, 750 F.3d at 1107; see also *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (recognizing that a URL can qualify as "contents" when it includes user-input information). At minimum, on the pleaded facts, UHS's insistence that these allegations amount only to non-content routing data asks the Court to resolve a merits dispute that cannot be decided against Plaintiff on a Rule 12(b)(6) record. *Twombly*, 550 U.S. at 570; *Ashcroft*, 556 U.S. 662, 679 (2009).

Nor can UHS dismiss the allegations as "hypothetical." UHS quotes *Cousin* for the proposition that the activities of a "hypothetical" visitor do not establish "what information" the plaintiff "provided to Defendant, via their browsing activity," that was disclosed to a third party. *Cousin*, 681 F. Supp. 3d 1117, 1129 (S.D. Cal. 2023). But Plaintiff alleges she actually visited

UHS's website during the relevant period, and that UHS "programmed the Trackers to deploy immediately upon a user landing on the Website," so that when Plaintiff visited, UHS "immediately began collecting" identifying information and "tracking [her] communications with the Website." (Compl. ¶¶ 80, 83.) Those factual allegations make the interception neither speculative nor hypothetical—and are more than sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**2. Plaintiff Alleges UHS's Direct Statutory Liability for Disclosing Communications**

UHS next argues that Plaintiff is asserting an impermissible aiding-and-abetting theory. But Plaintiff's claim rests on UHS's own alleged conduct—installing, deploying, and using the tracking tools and then using and disclosing the captured communications. The Complaint alleges that UHS "incorporated the code of the Trackers into the code of its Website," causing the trackers to be installed on users' browsers when they visited. (Compl. ¶ 75.) It further alleges that "[u]pon installing the Trackers," UHS "uses the Trackers to collect the identifying information and user behavior and activity," and that UHS "used the information collected by the Trackers and shared it with third parties." (Compl. ¶¶ 77, 85.) Those are direct acts of interception, use, and disclosure as pleaded. Plaintiff is not asking the Court to imply secondary liability. Instead, Plaintiff sues UHS because the statute itself imposes liability on the "person or entity . . . which engaged in [the ECPA] violation," *i.e.*, the party who "intercepted, disclosed, or intentionally used" the communication. 18 U.S.C. § 2520(a); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1089. The Complaint alleges UHS did exactly that. (Compl. ¶¶ 75, 77, 85.)

UHS's reliance on cases about intended recipients does not compel dismissal. UHS cites *Crowley* for the proposition that ECPA "does not apply to [an] intended recipient of [a] communication," and that a recipient's access to voluntarily transmitted information is not barred. *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1271–72 (N.D. Cal. 2001). But the Complaint's theory is not that UHS merely received communications intended for it; the claim is that UHS embedded third-party trackers that intercepted and relayed communications to third parties, and that UHS then used and disclosed the intercepted communications. (Compl. ¶¶ 75, 77, 85.) Moreover, the statute expressly reaches a party who "procures any other person to intercept"

communications. 18 U.S.C. § 2511(1)(a). Therefore, Plaintiff has sufficiently pled UHS's violation of the ECPA.

**3. UHS's One-Party Consent Defense Does Not Warrant Dismissal Because the Crime–Tort Exception Is Plausibly Alleged**

UHS argues Plaintiff's Wiretap Act claim fails because UHS consented and, as a party to the communication, its consent purportedly negates any claim as a matter of law. That argument ignores the text of § 2511(2)(d) and controlling Ninth Circuit authority. Specifically, § 2511(2)(d) itself contains an express limitation: the one-party consent defense is unavailable where the interception is undertaken "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). The Ninth Circuit has likewise made clear that the crime–tort exception applies where the defendant acted with an "independent criminal or tortious purpose" that is "separate and independent" from the interception itself. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); see also *Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202 (9th Cir. 1999). At the pleading stage, Plaintiff need only plausibly allege such a wrongful purpose; whether UHS in fact acted with that purpose is a merits question not suited for resolution on a Rule 12(b)(6) motion.

The Complaint plausibly alleges the requisite separate, wrongful purpose here. Plaintiff alleges that UHS deployed tracking technologies that captured visitors' website interactions and then shared the captured information with third parties to analyze Website data and marketing campaigns and conduct targeted advertising. (Compl. ¶ 85; see also Compl. ¶¶ 77–82.) It further alleges that UHS's objective in doing so was unlawful: UHS allegedly used covert tracking to disclose and commercially exploit the contents of visitors' communications in violation of California privacy and computer-access laws (including CIPA and CDAFA) and to invade Plaintiffs' privacy rights. (See, e.g., Compl. ¶¶ 107–15, 128–48, 149–58.) Those allegations plead more than interception for its own sake—they plead interception as the means to a separate prohibited end: the unauthorized disclosure and exploitation of intercepted communications for targeted advertising and marketing.

Moreover, this is not a generic retail website. UHS is a health plan, and the tracker-driven transmission of a user's interactions with a health-insurance website, particularly when combined with persistent identifiers and IP-derived location information, may constitute individually identifiable health information. Disclosing such information to third-party advertising and analytics vendors for marketing or profiling, without a valid HIPAA authorization or other permitted basis, and without appropriate safeguards such as an applicable business associate agreement, potentially violates HIPAA's Privacy Rule, 42 U.S.C. § 1320d et seq.; 45 C.F.R. pts. 160, 164, and likewise may violate California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 et seq. At minimum, these statutes underscore the heightened sensitivity of the intercepted communications and further support the inference that the interception and disclosure were undertaken for an unlawful, tortious purpose, bringing this case within § 2511(2)(d)'s crime-tort exception at the pleading stage.

Courts applying § 2511(2)(d) in the web-tracking context have repeatedly found the crime–tort exception plausibly alleged on materially similar allegations. See *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002, at *6–8 (N.D. Cal. Aug. 4, 2025) (crime–tort exception plausibly alleged where defendant arranged interception and then used intercepted communications to guide targeted advertising; emphasizing the inquiry is whether the purpose for the interception—its intended use—was criminal or tortious); *Shah v. Cap. One Fin. Corp.*, 2025 WL 714252, at *10–11 (N.D. Cal. Mar. 3, 2025) (denying dismissal where plaintiffs alleged interception for an unauthorized purpose resulting in tortious acts; holding one-party exemption therefore did not apply); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077–78 (N.D. Cal. 2023) (similar). These decisions reinforce that where, as here, the pleaded purpose is unlawful exploitation and disclosure of intercepted communications in violation of state privacy laws, the crime–tort exception precludes dismissal on a consent theory.

Finally, UHS's assertion that its status as a "party" forecloses liability "as a matter of law" overreads the party/consent defense in the covert web-tracking setting. The Ninth Circuit rejected a materially similar attempt to invoke the party exemption as a categorical bar, holding that "simultaneous, unknown duplication and communication" does not render a defendant exempt from

Wiretap Act liability "as a matter of law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607–08. At minimum, *In re Facebook* confirms that UHS's blanket party argument cannot short-circuit the statutory analysis at the pleadings stage—particularly where the Complaint plausibly alleges interception and disclosure for a wrongful purpose that triggers § 2511(2)(d)'s crime–tort exception. 18 U.S.C. § 2511(2)(d); *Twombly*, 550 U.S. at 570.

### C. Plaintiff Plausibly States a Claim Under the California Computer Data Access and Fraud Act, Cal. Penal Code § 502, and UHS's Motion to Dismiss Should Be Denied

Defendant's motion asks the Court to dismiss Plaintiff's CDAFA claim by recasting the Complaint as alleging only routine web activity (e.g., collection of an IP address) and by imposing extra-statutory requirements—namely, that Plaintiff plead significant, tangible computer damage and "hacking" that overcomes technical barriers. But at the Rule 12(b)(6) stage, the Court must accept the Complaint's well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Plaintiff alleges that UHS installed and used tracking code that ran on her browser, collected and transmitted her identifying information (including her IP address) and Website activity, and unjustly enriched UHS by using that information to maximize advertising revenue—conduct that plausibly satisfies CDAFA's "damage or loss" requirement and the "without permission" element. (Compl. ¶¶ 43–48, 86, 88, 90–91, 141–147.) As set forth below, Defendant's cramped construction of § 502 is inconsistent with the statute's text and the authorities it invokes, and it ignores the concrete, device-level and economic harms the Complaint pleads.

#### 1. Plaintiff Alleges Cognizable "Damage or Loss" Under § 502.

CDAFA authorizes suit by "[a]ny person who suffers damage or loss by reason of a violation" of § 502. Cal. Penal Code § 502(e)(1). Nothing in § 502(e)(1) imposes a heightened loss threshold, and a court interpreting § 502 has recognized that the statute does not require a minimum dollar amount of harm. See *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750 (N.D. Cal. July 20, 2010). Plaintiff plausibly pleads such harm here: she alleges UHS installed and used "Trackers" that caused her browser to transmit identifying information—including her IP address—and Website activity to third parties (Compl. ¶¶ 43–48, 90), and she further alleges UHS was

"unjustly enriched" by "accessing, acquiring, taking, and using" that identifying information to maximize advertising revenue (Compl. ¶ 146). Those allegations, taken as true, plausibly allege "damage or loss" within CDAFA's remedial scope.

Courts in this Circuit have also recognized that unauthorized code running on a user's device—and the attendant use of device resources to collect and transmit data—can constitute cognizable harm under § 502. See *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200–01 (N.D. Cal. 2020); *In re Apple iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012). Plaintiff alleges precisely that kind of device-level intrusion: the Trackers ran on her browser and caused her device to transmit identifying information and "other event data" associated with her visit (Compl. ¶¶ 43–48, 90)—activity that necessarily uses a visitor's device and network resources to execute third-party instructions and send data off-device. Under the foregoing authorities, those allegations plausibly support "damage or loss" under § 502 at the pleading stage.

Plaintiff also plausibly pleads an economic injury tied to unauthorized commercialization of her identifying information and online activity. Courts have acknowledged the economic value of browsing data and have allowed claims to proceed where plaintiffs plausibly allege unauthorized collection and monetization of that data. See *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020); *Smith v. Rack Room Shoes, Inc.*, No. 3:24-cv-06709-RFL, 2025 WL 2210002, at *3–4 (N.D. Cal. Aug. 4, 2025). Here, the Complaint alleges that UHS used the Trackers to collect identifying information and Website activity, and that UHS was unjustly enriched by using that information to maximize advertising revenue. (Compl. ¶¶ 90, 146.) That is not a bare, abstract allegation of a privacy wrong untethered to any concrete use; it is an allegation of unauthorized acquisition and commercial exploitation that plausibly constitutes "loss" under § 502(e)(1). See *Rodriguez v. Google LLC*, No. 21-cv-674077, 2025 WL 50425, at *3–4 (N.D. Cal. Jan. 3, 2025).

Defendant's reliance on cases rejecting CDAFA claims based on conclusory or purely passive data-collection allegations does not warrant dismissal here. *Heiting* and *Gutierrez* involved pleadings the courts found insufficient where plaintiffs alleged only collection of limited data generated during website interaction, without plausible allegations of cognizable § 502 harm. See

*Heiting v. Taro Pharm. U.S.A., Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023); *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *5 (C.D. Cal. Oct. 27, 2023). And while *Cottle* observed that "loss of the right to control [one's] own data" alone is insufficient, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021), Plaintiff alleges more than a mere loss of control: she alleges installation and use of Trackers that took and made use of data from her device (Compl. ¶¶ 90, 144), altered or added data/software on her computer system (Compl. ¶ 142), generated targeted advertising effects she experienced (Compl. ¶ 88), and unjustly enriched UHS through monetization of the identifying information collected (Compl. ¶ 146). Even under the more restrictive formulation Defendant cites—requiring damage or loss "to the computer system, network, program, or data contained on that computer"—Plaintiff's allegations that UHS "added and altered data and computer software" on users' computers through the installation and operation of Trackers plausibly satisfy § 502(e)(1). *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 845 (E.D. Cal. 2025); (Compl. ¶ 142).

For all these reasons, Plaintiff has plausibly alleged "damage or loss" under § 502(e)(1), and dismissal on this ground is unwarranted.

**2. Plaintiff Alleges Access "Without Permission."**

Section 502 requires that the challenged access and use be "knowingly and without permission." Cal. Penal Code § 502(c)(1), (2), (4), (6), (7). Plaintiff pleads that element directly: she alleges she "did not provide prior consent to Defendant to install or use the Trackers on [her] browser," and that class members likewise did not provide prior consent. (Compl. ¶¶ 86, 91.) At the pleading stage, that allegation must be accepted as true, and it defeats Defendant's attempt to convert mere visitation of a public website into blanket authorization for undisclosed, third-party tracking and off-site transmission of identifying information.

Defendant's position also conflates permission to request and receive webpage content with permission to deploy third-party tracking code that accesses and uses a visitor's device and data for advertising-related purposes. This Court has explained—when construing analogous authorization concepts—that "a person cannot access a computer 'without authorization' if the gatekeeper has given them permission to use it." *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1180

(E.D. Cal. 2010). Here, Plaintiff alleges she exercised exclusive control over her device and browsing data, and she did not grant permission for Trackers to be installed or used on her browser to collect identifying information and Website activity. (Compl. ¶¶ 86, 90–91.) On those allegations, the "without permission" element is plausibly satisfied.

Consistent with that principle, a court has allowed § 502 claims to proceed where plaintiffs plausibly alleged that code or applications collected personal information from users' devices in ways users did not authorize. See *Williams*, 498 F. Supp. 3d at 1200–01. And the Ninth Circuit has recognized that access can be "without permission" even where some initial interaction is allowed, when access proceeds beyond permitted boundaries. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066–67 (9th Cir. 2016). Accepting the Complaint's allegations as true, UHS's alleged installation and use of Trackers to collect and transmit Plaintiff's identifying information and Website activity for monetization is not conduct Plaintiff authorized merely by loading webpages. (Compl. ¶¶ 86, 90–91, 146.)

Finally, Defendant's insistence on a categorical technical barrier pleading requirement asks the Court to graft onto § 502 an extra-textual limitation that does not fit the Complaint's theory. Whatever role technolo gical barriers may play in cases alleging outsiders improperly accessed a restricted website or network, Plaintiff here alleges unconsented access to and use of her own computer and data via tracking code installed and run on her browser. (Compl. ¶¶ 86, 141–144.) Under the authorities above, those allegations plausibly plead "without permission" at the motion-to-dismiss stage.

Accordingly, Plaintiff has plausibly alleged violations of § 502(c)(1), (c)(2), (c)(4), (c)(6), and (c)(7), and she has plausibly alleged "damage or loss" by reason of those violations. The CDAFA claim should proceed.

**D. Plaintiff Adequately Pleads an Invasion of Privacy Under Article I, Section 1 of the California Constitution**

The Complaint here sets forth detailed facts satisfying each element of the California constitutional right to privacy claim. Defendant's contrary characterizations, for example, that Plaintiff "consented" to the data collection or that the information is not private, are improper at this

stage and cannot override the pleadings. The question is simply whether Plaintiff has stated a plausible privacy claim, not whether she will ultimately prove it. Because the Complaint alleges a legally protected privacy interest, a reasonable expectation of privacy, and a serious intrusion highly offensive to a reasonable person, Defendant's motion to dismiss this claim should be denied.

**1. UHS Engaged in an Affirmative Privacy Intrusion Despite Plaintiff's Voluntary Website Use**

Defendant's revised argument contends there was "no affirmative intrusion" because Plaintiff voluntarily visited UHS's website. This mischaracterizes the nature of the alleged conduct and the applicable law. Plaintiff's claim is not that she was coerced into visiting the site, but that when she did so, UHS affirmatively and surreptitiously embedded tracking code that invaded her privacy by recording and transmitting her data to third parties—Google, Meta/Facebook, Microsoft, and Adobe—without her knowledge. The voluntariness of visiting a website does not immunize Defendant's later covert interception of Plaintiff's private communications on that site. Plaintiff alleges that UHS intercepted detailed personal information, including her keystrokes, clicks, and personal identifiers, without notice or consent by means of hidden tracking technology (Compl. ¶¶ 50–52). Taking those facts as true, UHS's conduct constitutes an unauthorized intrusion into Plaintiff's private online interactions.

Defendant's reliance on the notion of "consent" is misplaced. Unlike the cases Defendant cites where a person knowingly provided information directly to a party, here Plaintiff had no knowledge that unrelated entities were siphoning off her data. She did not consent to being monitored by Google, Meta/Facebook, Microsoft, or Adobe simply by using UHS's website. The Complaint explicitly alleges that the data collection was done "without notice or consent" (Compl. ¶ 50). At the pleading stage, the Court must credit Plaintiff's lack of consent. Nothing in Plaintiff's website visit expressly alerted her that her activity would be transmitted to third parties; to the contrary, the context (a health insurance website) implied a confidential communication. Indeed, UHS's own site held itself out as a secure environment for personal health-related inquiries, reinforcing Plaintiff's expectation that her browsing would remain private. In short, Plaintiff invited UHS to respond to her web requests, but she did not invite UHS to install a clandestine eavesdropper.

Secretly recording a website user's actions and relaying them to external tracking and analytics providers is an affirmative act by the website owner, not passive conduct by the user. It is precisely the kind of "electronic eavesdropping" that the California constitutional privacy right is designed to police.

Defendant's "no intrusion" theory also conflicts with persuasive authority recognizing that surreptitious data monitoring can amount to a privacy intrusion. The Ninth Circuit has held that the covert tracking of online activity, even where the user initially interacts voluntarily with a website, may give rise to an intrusion upon privacy. For example, in *In re Facebook Internet Tracking*, the court allowed a privacy claim to proceed where Facebook tracked users' browsing after logout, noting that users could reasonably expect not to be clandestinely monitored in that way. Similarly, in *In re Meta Pixel Healthcare Litigation*, which involved a hospital sharing patients' web communications with Facebook via hidden code, the court found the allegations sufficient to state a privacy intrusion despite the patients' voluntary use of the hospital website. These cases undermine Defendant's suggestion that a person forfeits all privacy interests by simply visiting a website. At minimum, whether UHS's embedding of third-party tracking technologies associated with Google, Meta/Facebook, Microsoft, and Adobe constituted an offensive intrusion is a fact question not suitable for resolution on the pleadings. Plaintiff has plausibly alleged that UHS took affirmative steps to intrude upon her private affairs, which is all that is required at this stage.

**2. Plaintiff Had a Legally Protected Privacy Interest and a Reasonable Expectation of Privacy in Her Website Activity**

Defendant next argues that Plaintiff lacked any reasonable expectation of privacy in the information at issue, characterizing it as just a collection of IP addresses and routine browsing data. This argument ignores the context and the Complaint's allegations. Plaintiff was engaging with a health insurance website, a context inherently tied to personal and sensitive matters. The information being transmitted (as alleged) included personally identifiable details, e.g. names and contact information, device IDs, precise browsing behavior, and an IP address that revealed her geolocation (Compl. ¶¶ 50–52). California law recognizes a privacy interest in such personal data and communications. Privacy is an "inalienable right" under the state Constitution (Cal. Const., art. I, §

1), and statutes like the California Invasion of Privacy Act (CIPA) and the California Data Access and Fraud Act (CDAFA) specifically protect against unauthorized collection of identifying information (Compl. ¶ 53(i)). The Ninth Circuit observed that the surreptitious collection of a user's web browsing history implicates privacy interests because it can reveal personal habits and information users reasonably expect to remain private. *In re Facebook Internet Tracking*, 956 F.3d 589, 596–98, 603–06 (9th Cir. 2020). And a recent decision upheld privacy claims where a company's tracking of online behavior went beyond what users would anticipate. *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946–47 (N.D. Cal. 2022). The fact that Plaintiff's data was collected on UHS's own website does not negate her privacy interest, what matters is the nature of the data and the covert manner in which it was collected.

Given this legally protected interest, the remaining question is whether Plaintiff's expectation of privacy was reasonable. The Complaint alleges that she did have a reasonable expectation of privacy under the circumstances (Compl. ¶ 153). That expectation is supported by common experience and UHS's conduct. Users of a health-related website reasonably expect that their personal inquiries and interactions will remain with the company they are dealing with, and not be secretly transmitted to unrelated third-party tracking and analytics providers for marketing purposes. Nothing on the face of UHS's site plainly warned an ordinary customer that Google, Meta/Facebook, Microsoft, or Adobe (or any other third party) would be surveilling her clicks and keystrokes. In fact, it is alleged that UHS's website assured users of security, which would lead a person to believe her data was being kept confidential. The customary expectation when dealing with one's health insurance provider, akin to visiting a doctor's office or researching personal health coverage, is that your activities are private. There were no adequate disclosures to alter that custom-based expectation. Plaintiff could not reasonably anticipate that a visit to UHS's site would result in her personal data being sent to Google's, Meta/Facebook's, Microsoft's, and Adobe's systems (Compl. ¶¶ 79–80, 86–87, 91–92). Indeed, it is highly unusual for a healthcare company to funnel detailed user interactions to major advertising and analytics ecosystems without consent, and consumers are not expected to foresee such conduct. Even if internet users in general might know that websites employ basic cookies or analytics, they do not expect the kind of comprehensive,

personal surveillance alleged here, especially not on a site related to their health or insurance. As the Ninth Circuit noted, consumers have a reasonable expectation not to be tracked in ways that "contravene [their] expectations and expressed preferences". *In re Facebook Internet Tracking*, 956 F.3d at 606. Likewise, the California Supreme Court has emphasized that privacy expectations are greater, and any consent more narrowly construed, in contexts involving sensitive matters or trusted relationships. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 289–90 (2009). Here, Plaintiff's expectations of privacy were entirely reasonable, and at the very least, determining the reasonableness of those expectations is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss.

Notably, to the extent Defendant points to its posted privacy policy or similar disclosures to argue that Plaintiff was on notice, that argument raises factual issues beyond the pleadings. The Complaint does not concede that Plaintiff agreed to or even saw any policy permitting this kind of tracking. In fact, it alleges a lack of notice. A court has refused to find an expectation of privacy unjustified as a matter of law simply because a company buried a warning in a privacy policy. See, *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) (dismissal appropriate only where the challenged data practice was clearly disclosed and consented to). Here, whether any purported disclosure was sufficiently communicated to negate Plaintiff's expectations cannot be decided at the pleading stage. Taking Plaintiff's allegations as true, she had no reason to expect that UHS would share her personal browsing information in the manner alleged. Accordingly, she has adequately pleaded both a protected privacy interest in her data and an objectively reasonable expectation of privacy in her online interactions with UHS's website.

**3. The Alleged Conduct Was a Serious and Highly Offensive Invasion of Privacy**

Defendant's contention that the alleged intrusion is not highly offensive rests on an improper reframing of the pleadings as routine collection of basic data for ordinary marketing. The Complaint alleges the opposite: covert interception and disclosure of users' health-insurance website communications to third parties for marketing and profiling. UHS allegedly embedded multiple third-party tracking technologies—associated with Google, Meta/Facebook, Microsoft, and Adobe—that deploy immediately when a user lands on the Website and, before any consent is

obtained, collect and transmit identifying information and website behavior data (including IP-address-derived location data, URLs, and persistent identifiers) to third parties for advertising and marketing purposes. (Compl. ¶¶ 15–33, 50–52, 63–66, 79–82, 124–25.) Plaintiff further alleges this occurred while she browsed and reviewed health-insurance products and services—an inherently sensitive context that supports a heightened, reasonable expectation of privacy. (Compl. ¶¶ 71, 83, 153.) The Complaint expressly alleges UHS's surreptitious installation and use of these trackers constituted a serious invasion that would be highly offensive to a reasonable person, not a trivial or openly disclosed practice. (Compl. ¶ 155(i)–(iii).) California law confirms that highly offensive is an objective, context-specific inquiry ordinarily ill-suited for resolution on a motion to dismiss. *Hernandez*, 47 Cal. 4th 272, 287, 295.

Defendant's cases do not compel dismissal. *Low* and *Mastel* arose in general commercial or gaming settings and turned on the absence of allegations plausibly showing a severe or egregious intrusion. See *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024–25 (N.D. Cal. 2012); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139–42 (E.D. Cal. 2021). Here, Plaintiff alleges covert interception and third-party disclosure occurring immediately upon page load, before consent, and in the course of researching health-insurance products. (Compl. ¶¶ 71, 79–80, 83, 124–25.) *Popa* likewise is distinguishable: it involved routine e-commerce tracking on a retail website and emphasized the absence of allegations tying the tracking to a context involving heightened privacy expectations. *Popa v. Microsoft Corp.*, 153 F.4th 784, 792–94 (9th Cir. 2025). These pleadings instead describe a non-trivial, context-specific intrusion that a reasonable person could find highly offensive, foreclosing dismissal at the pleading stage.

Measured against the factors examined—including the degree and setting of the intrusion, the defendant's motives and purposes, and the sensitivity of the information—Plaintiff's allegations support offensiveness. First, the alleged purpose was commercial exploitation, not a user-expected function tied to healthcare needs: UHS purportedly diverted users' information to third-party analytics and advertising platforms for marketing. (Compl. ¶ 42.) That profit-driven, covert motive weighs in favor of offensiveness. See *Hernandez*, 47 Cal.4th at 295 (assessment of offensiveness considers motives and context of intrusion). Defendant's attempt to characterize marketing and

analytics as inherently proper misses the operative inquiry: whether a reasonable person would find the intrusion highly offensive under social norms. Plaintiff alleges UHS provided no meaningful disclosure or choice and instead implemented the tracking surreptitiously. Defendant's invocation of Cel-Tech's principle is inapposite; no law permits deception and secret exploitation of consumers' data. The constitutional privacy right may proceed alongside statutory claims to address broader privacy harms. *Brown v. Mortensen*, 51 Cal. 4th 1052, 1068–70 (2011) (constitutional privacy claim may proceed alongside statutory claims to address broader privacy harms).

Second, the alleged intrusion was pervasive in scope. Plaintiff pleads systematic tracking that begins immediately upon arrival and captures her interactions throughout the session, with no meaningful boundaries and designed to capture data "as early as possible and as frequently as possible." (Compl. ¶ 38.) Defendant's effort to minimize the breadth of surveillance by pointing to other cases is unavailing; continuous, surreptitious monitoring on a sensitive site can be highly offensive even if confined to a single domain. Consistent with this principle, a court has denied dismissal where plaintiffs alleged secret tracking on medical websites because the degree and scope could be found highly offensive. *In re Meta Pixel Healthcare Litg.*, 647 F. Supp. 3d 778 (denying dismissal; alleged secret tracking on medical websites could be highly offensive in degree and scope).

Third, the information and context render the disclosure plausibly offensive. Defendant's assertion that only "basic" data was shared conflicts with the Complaint's allegations that personal identifying information (including names and addresses) was collected and shared, along with activity and device identifiers. (Compl. ¶ 50.) Even apart from those identifiers, an IP address can reveal location and, combined with other data, facilitate identification. (Compl. ¶ 50.) More importantly, in context, browsing activity on a health-insurance website can reveal intimate facts about age, health concerns, and financial circumstances. Plaintiff alleges disclosure of her health-insurance-related interactions to major advertising and analytics ecosystems, enabling profiling and targeted marketing beyond any reasonable expectation of confidentiality. A court has recognized that aggregated browsing details can be highly personal, and that unauthorized sale or dissemination of such data can be highly offensive. *In re Facebook Internet Tracking*, 956 F.3d at 598, 603–04,

606. The same is true where personal online activity data is secretly collected and disseminated; the significance of the data must be assessed in context and is not properly dismissed in the abstract. *In re Google RTB*, 606 F. Supp. 3d at 949–50; see also id., 2022 WL 2165489, at *10.

At minimum, whether UHS's conduct "shocks the conscience" or constitutes an "egregious breach" is ordinarily a fact question, not one for resolution on the pleadings. *Hernandez*, 47 Cal.4th at 287, 295; *In re Facebook Internet Tracking*, 956 F.3d at 606. Plaintiff alleges a hidden, profit-driven interception and third-party disclosure of health-insurance website activity—conduct that plausibly exceeds reasonable consumer expectations in a setting where privacy is heightened. These allegations are sufficient to plead a serious and highly offensive invasion of privacy and to defeat dismissal. Defendant's motion to dismiss the Fourth Cause of Action should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety, or, in the alternative, grant leave to amend.

Dated: February 5, 2026

**THE RIGHT TRIAL LAWYERS**

By: /s/ Jim Treglio

Jim Treglio
Isabel Rose Masanque
Attorneys for Plaintiff