**HOGAN LOVELLS US LLP**
Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Adam Cooke (admitted *pro hac vice*)
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
adam.a.cooke@hoganlovells.com

*Attorneys for Defendant*
*United Healthcare Services, Inc.*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE MAGLIOCCA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., and DOES 1-100, inclusive,<br><br>Defendant. | Case No. 2:25-cv-03388-WBS-SCR<br><br>The Honorable William B. Shubb<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**<br><br>Date: March 30, 2026<br>Time: 1:30 PM PT<br>Courtroom: Courtroom 5, 14th Floor<br><br>Action Filed: September 8, 2025<br>Action Removed: October 17, 2025 |

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Plaintiff's CIPA Claims Fail .......... 1

A. Plaintiff Lacks Statutory Standing Because She Has Not Suffered a Privacy Injury. .......... 1

B. Plaintiff Fails to Allege the Interception of the "Contents" of Communications. .......... 3

C. Plaintiff Fails to Allege UHS Acted With the Requisite Intent. .......... 3

D. Commonplace E-Commerce Technologies Are Not "Pen Registers." .......... 5

II. Plaintiff's ECPA Claim Should Be Dismissed .......... 7

A. Plaintiff Fails to Allege the Interception of the "Contents" of Communications. .......... 7

B. Plaintiff's Aiding and Abetting Theory of ECPA Liability Fails. .......... 8

C. The Crime-Tort Exception to Party Consent Does Not Apply .......... 9

III. Plaintiff Cannot State a Claim Under CDAFA .......... 10

A. Plaintiff Fails To Allege Damage Or Loss Under CDAFA. .......... 10

B. Plaintiff Fails To Allege That UHS Accessed Her Computer "Without Permission." .......... 13

IV. Plaintiff Fails to Allege an Invasion of Privacy Under California's Constitution. .......... 14

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AtPac, Inc. v. Aptitude Sols., Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) ... 11, 13

*Blalock v. EquipmentShare.com Inc.*,
2026 WL 330067 (Cal. Super. Jan. 27, 2026) ... 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ... 10

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 12

*Comm'r v. Bosch's Est.*,
387 U.S. 456 (1967) ... 5

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ... 4, 15

*Doe I v. Google, LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ... 10

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024) ... 13

*Doe v. Tenet Healthcare Corp*.
789 F. Supp. 3d 814 (E.D. Cal. 2025) ... 12, 13

*Duarte v. Zachariah*,
22 Cal. App. 4th 1652 (1994) ... 1, 2

*Esparza v. Kohl's Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ... 16

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ... 4

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ... 13, 14

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. July 20, 2010) ... 13

*Flannery v. Prentice*,
26 Cal. 4th 572 (2001) ... 5

*Gutierrez v. Converse Inc.*,
No. 2:23-cv-06547 (C.D. Cal. Aug. 10, 2023), Dkt. No. 1 ........ 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 16

*Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*,
2023 WL 5806547 (E.D. Cal. Sept. 6, 2023) ........ 3

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 11

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-8002 (C.D. Cal. Sept. 25, 2023), Dkt. No. 4 ........ 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 12, 14, 15

*In re Google Cookie Placement*,
806 F.3d 125 (3rd Cir. 2015) ........ 10

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 10

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 11

*In re Jorge M.*,
23 Cal. 4th 866 (2000) ........ 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 3, 7

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ........ 16

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 10

*Limon v. Circle K Stores Inc.*,
84 Cal. App. 5th 671 (2022) ........ 1

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) ........ 2, 15

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 15, 16

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 2

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 10

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ........ 9, 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 2

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 4

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ........ 6, 7

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 8

*Schallert v. Orkin LLC*,
2025 WL 4332757 (Cal. Super. Dec. 15, 2025) ........ 6, 7

*Schneider v. California Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ........ 3, 9, 11

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 2

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........ 11

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 9

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 4

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 16

*Turrieta v. Lyft, Inc.*,
16 Cal. 5th 664 (2024) ........ 5, 6

*U.S. v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 2

*Variety Media, LLC v. Super. Ct. Cnty. of L.A.*,
No. 25STCV01865 (Cal. App. 2nd Supp. Jan. 8, 2026) ........ 5

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) ........ 11

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 14, 15

*Yates v. United States*,
574 U.S. 528 (2015) ........ 6

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 8

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 10

**Statutes**

8 U.S.C. § 1030 ........ 11

18 U.S.C. § 2511 ........ 8, 9

18 U.S.C. § 2520 ........ 8

45 C.F.R. § 164.500 *et seq.* ........ 9

Cal. Civ. Code § 56, *et seq.* ........ 9

Cal. Civ. Code § 1798.100, *et seq.* ........ 7, 13, 14

Cal. Civ. Code § 1798.175 ........ 7

Cal. Penal Code § 502 ........ *passim*

Cal. Penal Code § 631 ........ *passim*

Cal. Penal Code § 637.2 ........ 1, 2

Cal. Penal Code § 638.51 ........ *passim*

Cal. Penal Code § 638.52 ........ 6

**Other Authorities**

86 Cal. Op. Att'y Gen. 198 (2003) ........ 6

California Senate Comm. on Pub. Safety, *2015 Cal. A.B. 929 Comm. Report*, 2015-2016
Reg. Sess. at 10 (June 15, 2015) ........ 6

Restatement (Second) of Torts § 7 (Am. L. Inst. 1965)........................................................ 2

## INTRODUCTION

Plaintiff's Opposition does not cure the fundamental defects in her Complaint. Plaintiff still fails to allege any concrete privacy injury, any interception of the contents of a communication, or any facts showing that UHS acted with the required intent to state viable claims. Instead, Plaintiff uses her Opposition brief to try to supplement her deficient pleading and urges this Court to adopt expansive interpretations of California and federal law that courts have repeatedly rejected. At bottom, Plaintiff's theory of liability would transform routine e-commerce technologies into *per se* statutory violations—untethered from injury, intent, or legislative purpose, and even when these technologies are amply disclosed to website visitors. Neither the California Invasion of Privacy Act ("CIPA"), the Electronic Communications Privacy Act ("ECPA"), nor the California Computer Data Access and Fraud Act ("CDAFA") supports such a result. Because Plaintiff has not—and cannot—plausibly state any claim for relief, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF'S CIPA CLAIMS FAIL

Plaintiff's CIPA claims fail for the fundamental reason that she has not identified any privacy harm she suffered as the result of the alleged recording of her unspecified and non-sensitive browsing activities. Even setting aside her improper attempts to augment the Complaint through her Opposition, her Section 631(a) claim still falls short: Plaintiff does not plausibly allege that the "contents" of her communications were "intercepted," nor that UHS acted with the requisite intent. Plaintiff's Section 638.51 claim is equally deficient, as the commonplace e-commerce technologies at issue do not constitute "pen registers" under any plausible reading of the statute.

#### A. Plaintiff Lacks Statutory Standing Because She Has Not Suffered a Privacy Injury.

CIPA Section 637.2 states in no uncertain terms that to assert a claim, an individual must have been "injured by a violation of this chapter." "Statutory terms or words"—like "injured" here—are to be "construed according to their ordinary, common meaning." *Limon v. Circle K Stores Inc.*, 84 Cal. App. 5th 671, 701 (2022) (citation omitted). An "injury" is understood as an "invasion of a legally protected interest"—as relevant here: one's right to privacy. *See Duarte v.*

*Zachariah*, 22 Cal. App. 4th 1652, 1661 (1994) (citing Restatement (Second) of Torts § 7 (Am. L. Inst. 1965)). Accordingly, even though Section 637.2 does not require showing a quantifiable monetary harm that does not relieve Plaintiff of her burden to prove she was "injured by [the CIPA] violation." CIPA § 637.2. Plaintiff does not dispute that under California law "whether a plaintiff has a stated legally protectable privacy interest" depends on "the nature of the information at issue" and whether she has "an objectively reasonable expectation of privacy" over such information. Mot. 7 (collecting cases). California courts are clear that an internet user does not have a reasonable expectation of privacy over their device's IP address, *see U.S. v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008), *see also* Mot. 9–10 (collecting cases), or their non-sensitive browsing activities, *see Popa v. Microsoft Corp.*, 153 F.4th 784, 791–92 (9th Cir. 2025), *see also* Mot. 8–9 (collecting cases). This is particularly true where, as here, "Plaintiff does not allege that [her] name, postal address, email address, telephone number, or any other personal identifiers were collected" with her browsing information. *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (dismissing CIPA Sections 631(a) and 638.51 claims lacking privacy injury).

Plaintiff essentially ignores Ninth Circuit precedent deciding this exact issue. *See* Opp. 4–5. Specifically, both *Shah* and *Moody* which Plaintiff rely upon,[1] predate *Popa*, in which the Ninth Circuit found that use of e-commerce technologies on a public-facing website that allegedly collected same type of information at issue here did not create a privacy injury because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information." Mot. 8 (citing *Popa*, 153 F.4th at 791–92). Here too, Plaintiff fails to identify any "embarrassing, invasive, or otherwise private information" that the E-Commerce Technologies[2] purportedly collected. Plaintiff merely alleges that she visited the Website to "browse and review the health insurance products and related services offered by Defendant." Compl. ¶ 83. Such threadbare allegations are routinely found insufficient to establish any privacy injury. *See* Mot. 8 (collecting cases). Plaintiff's CIPA claims should be dismissed for this reason alone.

[1] Opp. 4 (citing *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932–33 (N.D. Cal. 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077–78 (C.D. Cal. 2024)).

[2] "E-Commerce Technologies" refers to the technologies provided by Google, Meta, Microsoft, and Adobe (the "Nonparties") that Plaintiff alleges UHS installed on the Website.

**B. Plaintiff Fails to Allege the Interception of the "Contents" of Communications.**

Plaintiff's failure to show any privacy injury to support her CIPA claims is illustrative of her broader failure to demonstrate that the "contents" of any of her communications were illegally intercepted. The only data Plaintiff alleges the E-Commerce Technologies collect is Website visitors' page visits, buttons clicked, URLs, how far they scroll, length of session, and device IP addresses. Mot. 11 (citing Compl. ¶¶ 19-33). Such information does not convey the "substance, purport, or meaning" of a communication, particularly where, as here, Plaintiff does not allege what pages of the Website she visited, or what information she purportedly provided to UHS during her visit. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1105–6 (9th Cir. 2014); *see also* Mot. 11.

Likely recognizing this fatal deficiency, Plaintiff attempts to prop up the threadbare allegations in the Complaint through her Opposition. Plaintiff, for example, argues that UHS intercepted her "search requests" and "form submissions." Opp. 5. But such allegations are simply ***not*** in the Complaint. Likewise, Plaintiff argues that path and query-strings of a URL may constitute "contents" where they "concern the substance of a communication," Opp. 5, but again, Plaintiff never alleges that UHS intercepted URL path or query-strings on the Website; nor does she identify any such path or query-strings that she contends "concern the substance of a communication" ***she*** had on the Website. Plaintiff's "'new allegations contained in [her] opposition . . . are irrelevant for Rule 12(b)(6) purposes," *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), as "a court may not look beyond the complaint" in "determining the propriety of a Rule 12(b)(6) dismissal." *Id.*; *see also Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, 2023 WL 5806547, at *1 (E.D. Cal. Sept. 6, 2023) ("[U]nder Rule 12(b)(6), 'review is limited to the complaint alone.'" (citation omitted)). The Court should reject Plaintiff's improper attempts to cure her failure to allege that the "contents" of any of her communications were intercepted and dismiss her Section 631(a) claim.

**C. Plaintiff Fails to Allege UHS Acted With the Requisite Intent.**

Plaintiff also cannot escape her failure to allege facts showing that UHS had the specific intent to aid third parties in the purported interception of Plaintiff's communications. Plaintiff

disputes that the statutory terms "agrees with" and employs" require such a showing. But under statutory canons of construction, these terms should be interpreted consistent with the surrounding terms of "aiding" and "conspiring," which require showing the defendant acted with the specific intent to further the wrongdoing. *See* Mot. 12–13. This aligns with the rule of lenity, *see id.*, and "the common law definition of aiding and abetting." *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (analyzing Section 631(a) secondary liability clause). Under this definition, a person may be held liable as an aider and abettor if they:

> (a) know[] the other's conduct constitute[s] a breach of duty and give[] substantial assistance or encouragement to the other to so act or (b) give[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Id*. (citation omitted). Where, as here, Plaintiff has not plausibly alleged that UHS "knew that [the third parties'] conduct constituted a breach of some duty," she cannot state a Section 631(a) aiding and abetting claim. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024) (dismissing Section 631(a) claim for lack of intent); *Esparza*, 2024 WL 559241, at *6 (similar).

Plaintiff's reliance on *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) and *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025), Opp. 6, is misplaced. In *Cousin*, the court declined to interpret "agrees with" or "employs" to align with "aiding and abetting" because the defendant "provide[d] no case law" to address the meaning of those terms. *Id*. at 1130. That case law and statutory analysis is set forth above and in UHS's Motion, which shows that these terms must be interpreted to align with the statutory context. Mot. 12–13. *Tate* likewise failed to engage in such analysis and instead simply cited back to the cursory reasoning in *Cousin*. 762 F. Supp. 3d at 951.

Under Plaintiff's contrary interpretation of "employs" and "agrees with," ***any act*** that furthers an alleged wiretap (or even agreement with such an act) would violate CIPA, regardless of the defendant's knowledge of or intent to assist the purported wiretap. To the extent Plaintiff argues there is no knowledge or intent requirement, this would effectively impose strict liability, which is contrary to California criminal law. *See In re Jorge M.*, 23 Cal. 4th 866, 872 (2000) ("[T]he requirement . . . [of] some form of guilty intent, knowledge, or criminal negligence is . . . so

fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it."). Moreover, because Section 631(a)'s direct liability prong requires "willful[]" conduct, the Court should not endorse a lesser form of *mens rea* for third-party liability than is required for direct liability under the same statute. *See Flannery v. Prentice*, 26 Cal. 4th 572, 578 (2001) (courts must look to "the entire substance of the statute" and "avoid any construction that would produce absurd consequence" (citation omitted)).

Here, all that Plaintiff alleges is that UHS chose to use the E-Commerce Technologies, *see* Compl. ¶ 108; that is insufficient to establish that UHS acted with the requisite intent to aid or abet a violation of Section 631(a). Plaintiff's Section 631(a) should therefore be dismissed.

### D. Commonplace E-Commerce Technologies Are Not "Pen Registers."

Plaintiff also urges this Court to ignore Section 638.51's structure and legislative history, as well as California's broader privacy legislation context, and adopt a reading of the statute that would result in absurd consequences. This Court should instead follow the numerous California state courts analyzing California law, *see* Mot. 13–15, which have held that Section 638.51 was never intended to criminalize commonplace e-commerce technologies. *See Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967) (when applying state law where the State's highest court has not addressed the question, federal courts should give "'proper regard' to the relevant ruling of other courts of the State"). In fact, California's Second Appellate District recently entered an order to show cause as to "why the relief sought" in a writ petition seeking to overturn the same overly expansive interpretation of Section 638.51 that Plaintiff advances here "should not be granted." Order to Show Cause, *Variety Media, LLC v. Super. Ct. Cnty. of L.A.*, No. 25STCV01865 (Cal. App. 2d Supp. Jan. 8, 2026).[3]

Plaintiff and the cases she cites focus on the statute's definition of a pen register, which does not literally limit its application to telephonic communications. *See* Opp. 7–8. But that reductive analysis ignores the Court's "fundamental task" with "any question of statutory interpretation" is "to determine the Legislature's intent so as to effectuate the law's purpose."

---

[3] A copy of Variety Media, LLC's writ petition and the California Second Appellate District's Order are attached as Exhibits 1 and 2, respectively.

*Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 687 (2024) (cleaned up). Examination of the plain meaning of statutory language cannot be done "in isolation;" rather, the Court must "look to the entire substance of the statut[e] in order to determine [its] scope and purpos[e]," and "must harmonize the various parts" by "considering them in the context of the statutory [framework] as a whole." *Id.* (citation omitted); *see also Yates v. United States*, 574 U.S. 528, 537 (2015) (analyzing statutory language in light of "the specific context in which that language is used, and the broader context of the statute as a whole" (citation omitted)).

"CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software." *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *3 (Cal. Super. Dec. 10, 2025); *see also* Mot. 13–14. For example, under CIPA Section 638.52, for a peace officer to use a pen register they must obtain an order from a magistrate that "shall specify" the identity of the person "whose name is listed [on] the ***telephone line***" and the "physical location of the ***telephone line***" to which the pen register or trap and trace device is to be attached. Cal. Pen. Code § 638.52(d)(1)–(3) (emphasis added). Reading Section 638.52 alongside Section 638.51, "it appears overwhelmingly likely that the Legislature had in mind devices attached to a telephone line when it referred to [pen registers and] 'trap and trace' devices[.]" *Schallert v. Orkin LLC*, 2025 WL 4332757, at *4 (Cal. Super. Dec. 15, 2025).

Section 638.51's legislative history likewise supports a narrower interpretation. The Committee Report notes that a "pen register" is a tool that "allows law enforcement officers to record all outgoing numbers from a particular telephone line."[4] *See also* 86 Cal. Op. Att'y Gen. 198 (2003) ("A 'pen register' records the numbers dialed out from a particular telephone line."). The "legislative history reveals the purpose of the bill," which for Section 638.51 was "to prevent the use of pen registers and trap and trace devices ***on telephones***." *Blalock v. EquipmentShare.com Inc.*, 2026 WL 330067, at *1–2 (Cal. Super. Jan. 27, 2026) (emphasis added). As one court recently concluded, "[s]urely, if the Legislature intended its definition of a [pen register or] 'trap and trace'

[4] California Senate Comm. on Pub. Safety, *2015 Cal. A.B. 929 Comm. Report*, 2015–2016 Reg. Sess. at 10 (June 15, 2015).

device to broadly regulate tracking software by websites, there would be at least some discussion of that issue in the legislative history. There is none." *Schallert*, 2025 WL 4332757, at *5.

Tellingly, Plaintiff fails to address UHS's argument that the California Consumer Privacy Act ("CCPA"), not CIPA, reflects the California Legislature's deliberate approach to regulating e-commerce technologies. *See* Mot. 15–16. "[T]he CCPA expressly contemplates businesses will collect and use personal data so long as a regulatory framework is followed." *Ink Am.*, 2025 WL 4034985, at *4. And, as the CCPA instructs, "[w]herever possible, law relating to consumers' personal information should be construed to harmonize with" the CCPA. Mot. 16 (citing Cal. Civ. Code § 1798.175). Harmonization between the CCPA and CIPA is straightforward: the CCPA—not CIPA—covers UHS's use of the E-Commerce Technologies. As the *Schallert* court put it:

> Striking the right balance between privacy and utility in web browsing is a difficult and important issue. And, precisely because it is a difficult and important issue, the Court cannot conclude that the Legislature *sub silentio* intended to establish a regulatory regime over web tracking through the cryptic reference to a "trap and trace device" [or pen register] in sections 638.50 and 638.51.

2025 WL 4332757, at *6.

Instead of adopting Plaintiff's expansive interpretation, this Court should interpret Section 638.51 consistent with the Legislature's intent and in harmony with the CCPA so that it does not criminalize commonplace e-commerce technologies, and accordingly, dismiss Plaintiff's claim.

## II. PLAINTIFF'S ECPA CLAIM SHOULD BE DISMISSED

Plaintiff's Opposition also cannot salvage her ECPA claim, which warrants dismissal because (i) Plaintiff fails to allege that any contents of communications were intercepted, (ii) Plaintiff's aiding and abetting theory of liability is not permitted under the ECPA, and (iii) Plaintiff has not pled facts showing the ECPA's crime-tort exception is applicable.

### A. Plaintiff Fails to Allege the Interception of the "Contents" of Communications.

As detailed above, *supra* p. 2, the categories of information Plaintiff alleges were intercepted do not implicate the "substance, purport, or meaning" of a communication. *See In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also* Mot. 16–17.

Plaintiff argues that information concerning "what buttons [visitors] click, how far they

scroll on the page, and the length of their session" plausibly concern the contents of communications, *see* Opp. 9 (citing Compl. ¶ 22), but Plaintiff fails to cite to any supporting authority finding that such metadata constitutes the contents of communications. *Contra Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (finding "keystrokes, mouse clicks, pages viewed, . . . the duration of the visit, [a device's] IP address, . . . browser type, and the operating system" are not content information). That is not surprising, because Plaintiff does not allege what pages of the Website she visited or what information she purportedly provided to UHS.

Plaintiff pivots to arguing that URL information may constitute "contents" where a "URL contains information that conveys what the user sought or did," such as when it includes "user-input information." Opp. 9. Again, as detailed above, *supra* p. 2, Plaintiff never alleges that UHS intercepted URL path or query-strings on the Website; nor does she identify any such path or query-strings that she contends concern the substance of a communication.

Plaintiff fails to allege that any contents of communications were intercepted, and her ECPA claim should therefore be dismissed.

**B. Plaintiff's Aiding and Abetting Theory of ECPA Liability Fails.**

UHS demonstrated that ECPA does not provide for secondary liability. *See* Mot. 17–18. Plaintiff's argument that ECPA "reaches a party who 'procures any other person to intercept' communications," Opp. 10–11 (citing 18 U.S.C. § 2511(1)(a)), misses the mark because ECPA's "procurement" provision pertains only to criminal liability, not civil liability. ECPA allows private civil actions only against individuals who engage in prohibited interceptions, disclosures, or uses; it does ***not*** permit claims against those who engage in alleged "procure[ment]." 18 U.S.C. § 2520.

Plaintiff also argues UHS is directly liable for the interception, use, and disclosure of Plaintiff's communications. Opp. 10. To start, Plaintiff's suggestion that UHS rather than third parties purportedly intercepted Plaintiff's communications dooms both her ECPA and CIPA Section 631(a), as UHS is unquestionably a party to and the intended recipient of Plaintiff's communications with the Website. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (a party to a communication can record it under CIPA Section 631); 18 U.S.C. § 2511(2)(d) (party exception under ECPA). Likewise, in order for UHS's alleged "disclosure" or "use" to violate ECPA, the

information disclosed must have been first "obtained through [an] interception" in violation of ECPA. 18 U.S.C. § 2511(1)(c)-(d). Again, as the intended recipient of Plaintiff's alleged communications, any information Plaintiff sent to UHS that UHS allegedly subsequently disclosed cannot have been "intercepted" in violation of ECPA.

### C. The Crime-Tort Exception to Party Consent Does Not Apply.

For the first time in her Opposition, Plaintiff argues that the crime-tort exception applies to defeat ECPA's one-party consent provision. Opp. 11–13. This brand-new theory of liability relies on ***unpled*** allegations that UHS's conduct violated HIPAA's Privacy Rule and California's Confidentiality of Medical Information Act ("CMIA"). *Id*. Plaintiff's attempt to supplement her Complaint via briefing is improper and should be rejected. *See Schneider*, 151 F.3d at 1197 n.1. Even if the Court were to consider Plaintiff's new theory, ECPA's crime-tort exception does not apply here. To invoke the crime-tort exception, Plaintiff must show that UHS: (i) ***intended*** to commit an (ii) ***independent*** crime or tort (iii) ***at the time*** of the alleged interception. *See Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022) (emphasis added). Plaintiff has not (and cannot) establish that UHS intercepted her purported communication with the intent to commit an independent crime or tort.

Plaintiff premises her crime-tort exception theory on the argument that UHS's use of the E-Commerce Technologies violated CIPA, CDAFA, HIPAA, and possibly CMIA. *See* Opp. 11–12. With respect to CIPA and CDAFA, as described *supra* pp. 1–7 and *infra* pp. 11–14, Plaintiff fails to allege that UHS violated either statute, and therefore neither can form the basis for the crime-tort exception. With respect to HIPAA and CMIA, Plaintiff fails to allege any facts in the Complaint indicating that UHS's conduct violated either statute.

Moreover, Plaintiff cannot show that UHS's purpose for using the E-Commerce Technologies was to violate any of the aforementioned statutes. "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the ***purpose*** for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original). A plaintiff must allege that either the "***primary motivation*** or a ***determining factor*** in [the defendant's] actions [was] to injure plaintiffs tortiously."

*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (citation omitted) (emphasis added). At most, Plaintiff alleges that UHS used the E-Commerce Technologies with the intent to drive revenue through advertising, but as courts in California have held, "the crime-tort exception to the [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (citation omitted); *see also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) ("[T]he tort or crime exception cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"); *Doe I v. Google, LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024) (similar).

Finally, Plaintiff cannot show that UHS "intercepted the communication for the purpose of a tortious or criminal act that is ***independent*** of the intentional act of recording." *In re Google Cookie Placement*, 806 F.3d 125, 145 (3rd Cir. 2015) (citation omitted) (emphasis added). Stated differently, the "criminal or tortious purpose must be separate and independent from the act of the recording [i.e., the act of interception]." *Planned Parenthood*, 51 F.4th at 1136. Here, the alleged interception and purported crime are one and the same: the alleged recording of Plaintiff's browsing activity. Thus, the crime-tort exception is not applicable. *See Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (crime-tort exception is not triggered when "the tortious conduct is the alleged wiretapping itself" (citation omitted)); *see also Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025) (similar).

## III. PLAINTIFF CANNOT STATE A CLAIM UNDER CDAFA

### A. Plaintiff Fails To Allege Damage Or Loss Under CDAFA.

Plaintiff's Opposition still fails to identify any cognizable "damage or loss" that Plaintiff purportedly suffered necessary to establish statutory standing under CDAFA. That CDAFA does not require a specific minimum dollar threshold does not obviate the clear statutory requirement to plead "damage or loss." *Contra* Opp. 13. Plaintiff has not done so. *See* Mot. 18–20. Neither Plaintiff's argument that UHS was purportedly unjustly enriched nor her newly asserted theory that the E-Commerce Technologies' code caused her device to expend resources (found nowhere in the Complaint) can rescue her CDAFA claim.

Plaintiff once again seeks to improperly supplement her Complaint, *Schneider*, 151 F.3d at 1197 n.1, by arguing that UHS's use of E-Commerce Technologies caused her device to expend resources, which she contends constitutes "damage or loss" under CDAFA, *see* Opp. 14. But unlike *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1199 (N.D. Cal. 2019), ***nowhere*** in the Complaint does Plaintiff allege that the E-Commerce Technologies used her device's resources or that she bases her standing to assert a CDAFA claim on such (nonexistent) allegations. Further, allegations that the E-Commerce Technologies simply interact with her device are insufficient to establish "damage or loss." *See* Opp. 14 (citing Compl. ¶¶ 43–48, 90). As the court in *In re iPhone Application Litigation* explained, to establish damages in this context, "the consumer must establish that the [d]efendant intended to impair the recipient's service." 844 F. Supp. 2d 1040, 1067 (N.D. Cal. 2012) (analyzing damages under the Computer Fraud and Abuse Act ("CFAA")). And damage "does not occur simply by 'any use or consumption of a device's limited resources,' but rather 'damage' must arise from an impairment of performance . . . [that] exceeds the device's finite capacity so as to result in a slowdown, if not an outright 'shutdown,' of service." *Id.* (citation omitted). Likewise, "loss" was intended to cover "the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks." *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1183–84 (E.D. Cal. 2010) (Shubb, J.) (analyzing CFAA). That reasoning applies with equal force here. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1032 (N.D. Cal. 2014) (describing CDAFA as an anti-hacking statute analogous to CFAA). Plaintiff fails to allege how the E-Commerce Technologies' code impairs her device or that UHS implemented it with the intent to do so.

Plaintiff also ignores that CDAFA requires the "damage or loss" to be "to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website," Mot. 18–19 (citing *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023)), and instead, argues that UHS's purported unjust enrichment is sufficient. Opp. 14. This argument fails for several reasons.

As an initial matter, Plaintiff's theory is premised on UHS's purported unjust benefit, not on any "damage or loss" incurred by Plaintiff, as required under CDAFA. Rather than

meaningfully engage with "the majority of courts to consider the issue," which found that CDAFA's damage or loss "contemplates some damage to the computer system, network, program, or data," Mot. 19, Plaintiff simply handwaves away *Heiting* and *Gutierrez* as inapposite because they only involved "purely passive data-collection." *See* Opp. 14–15. That is wrong. The plaintiffs in both *Heiting* and *Gutierrez* alleged that the defendants' "code that embeds content from [a third-party] website" "intercepts the inquiries that consumers believe are being sent directly to [defendants] and diverts them to [the third party]." *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-8002 (C.D. Cal. Sept. 25, 2023), Dkt. No. 4 ("*Heiting* Compl.") ¶ 9; *see also Gutierrez v. Converse Inc.*, No. 2:23-cv-06547 (C.D. Cal. Aug. 10, 2023), Dkt. No. 1 ("*Gutierrez* Compl.") ¶ 9 (similar). These allegations are materially similar to Plaintiff's allegations here that UHS used code that "capture[s] and record[s] various data from the user and transmits the data to [third parties]." Compl. ¶¶ 20, 21, 28, 32, 33. Further, the alleged types of data collected are nearly identical across the cases. *Compare* Compl. ¶¶ 22, 24, 27, 29, 46 (alleging capture of IP addresses, page visits, clicks, scrolls); *with Heiting* Compl. ¶ 11 (alleging collection of "unique device identifiers," "IP addresses," "links clicked," "page views," "time spent"); *see also Gutierrez* Compl. ¶ 11 (similar).

Even if unjust enrichment could amount to "damage or loss" under CDAFA (it cannot), Plaintiff still has not alleged facts showing that UHS was unjustly enriched by Plaintiff's browsing information. Mot. 20. Unlike in *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023), and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020), where the plaintiffs made specific factual allegations that their browsing histories carried financial value, *see Brown*, 685 F. Supp. 3d at 940 (alleging that Google paid "users $3.00 a day for their browsing history"); *Facebook Tracking*, 956 F.3d at 600 (alleging study that "values users' browsing histories at $52 per year"), Plaintiff's Complaint includes no comparable allegations regarding enrichment.

Plaintiff also has not pled facts indicating how any purported enrichment UHS obtained via its use of the E-Commerce Technologies was "unjust," *see* Mot. 19 (collected cases), particularly given that the use of such technologies is contemplated and permitted under the CCPA. *See supra* p. 7. Like the plaintiff in *Doe v. Tenet Healthcare Corp.*, who similarly alleged that the defendant

used Google's and Meta's pixel technologies, Plaintiff here "cannot base [her] CDAFA damages on a theory that [she] lost a benefit to sell that data [herself]." 789 F. Supp. 3d 814, 825–26 (E.D. Cal. 2025); *see also Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024) (rejecting damages based on the value of personal data intercepted using "tracking pixels" under CDAFA). Plaintiff's CDAFA claim should be dismissed with prejudice.

**B. Plaintiff Fails To Allege That UHS Accessed Her Computer "Without Permission."**

Plaintiff's CDAFA claim also should be dismissed because the allegations in the Complaint do not show that UHS accessed her computer "without permission." In her Opposition, Plaintiff incorrectly equates CDAFA's "without permission" element with a requirement to obtain affirmative opt-in consent, which is unsupported by case law. *See* Opp. 15–16. Rather, as consistent with CDAFA's focus on hacking, *see* Mot. 20, to access "without permission" requires that UHS "gaine[ed] access to [Plaintiff's] computer, computer network, or website ***to which access was restricted through technological means***[.]" *Id.* (citing *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *6, *11 (N.D. Cal. July 20, 2010)) (emphasis added).

Plaintiff does not identify any technological means that UHS circumvented or hacked to access her browser. To the contrary, Plaintiff affirmatively visited the Website, causing her browser to send a GET request to UHS to receive the Website's code. *See* Compl. ¶¶ 43–48. This is precisely the circumstances contemplated by this Court in *AtPac*: "a person cannot access a computer 'without authorization' if the gatekeeper has given them permission to use it." 730 F. Supp. 2d at 1180. Plaintiff's allegation that UHS used this information for advertising purposes does not change the analysis. "[T]he plainest and common-sense understanding of the definition of the term 'exceeds authorized access'"—particularly in light of its use in a criminal statute that should be interpreted narrowly—"is one that simply examines whether the accessor was entitled to access the information for ***any purpose***." *Id.* at 1181 (emphasis added). Plaintiff cannot plausibly argue that UHS categorically lacked permission to send code to her browser when she requested the Website's code. And, unlike in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), Plaintiff does not allege that "such permission [was] revoked explicitly." *Id.*

(plaintiff sent a cease-and-desist letter to defendant stop the access). For instance, Plaintiff could have utilized the functionality highlighted in UHS's Privacy Policy that allows visitors to opt-out of the use of certain cookies and pixels,[5] but there is no allegation that she ever did so.

Plaintiff fails to state the core elements of a CDAFA claim, and her claim should therefore be dismissed with prejudice.

## IV. PLAINTIFF FAILS TO ALLEGE AN INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION

UHS showed in its Motion that Plaintiff's California Constitution invasion of privacy claim should be dismissed because (i) there was no affirmative intrusion, (ii) Plaintiff did not have a reasonable expectation of privacy over her nonsensitive browsing activity, and (iii) UHS's use of the E-Commerce Technologies was not highly offensive. In her Opposition, Plaintiff disputes each of the three points raised in UHS's Motion, but her counterarguments are unavailing.

There is no question that Plaintiff visited UHS's Website and caused her browser to request the Website's code, which includes technologies provided by third parties—as is commonplace across the internet. *See* Mot. 2. Plaintiff's voluntary interaction with the Website defeats her invasion of privacy claim. *See id*. 22–23 (collecting cases). And, contrary to Plaintiff's contention that UHS "surreptitiously" utilized E-Commerce Technologies without her knowledge, *see* Opp. 17, UHS collects information about visitors' activity on the website consistent with the CCPA and subject to clear disclosures. *See* Mot. 24. This is therefore unlike *Facebook Internet Tracking*, which involved allegations that the defendant was tracking users browsing activities on third-party websites surreptitiously even after they logged out of the account—conduct not disclosed in the defendant's privacy policy. 956 F.3d at 610.

As described above, *supra* pp. 1–2, Plaintiff does not have a reasonable expectation of privacy over her non-sensitive and non-personally identifying browsing activities. Merely visiting a health insurance website does not, by itself, implicate privacy interests. *Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) (dismissing intrusion of privacy claim where plaintiff merely alleged visiting the website, without specifying her usage or any

---

[5] *See* UnitedHealthcare Online Services Privacy Policy, https://www.uhc.com/privacy.

disclosure of healthcare information); *Cousin*, 681 F. Supp. 3d at 1123 (similar); *Maghoney*, 2026 WL 497402, at *5 (similar).

Plaintiff's vague allegations about visiting the Website to "browse and review heath insurance products and related services" are a world apart from those at issue in *Facebook Internet Tracking*, *In re Meta Healthcare Litigation* ("*Meta Healthcare*"), and *In re Google RTB Consumer Privacy Litigation* ("*Google RTB*"). In *Facebook Internet Tracking*, the defendant allegedly collected personally identifiable information about plaintiffs from across the internet to create a "cradle-to-grave profile" that "could include a user's employment history and political and religious affiliations." 956 F.3d at 599. In *Meta Healthcare*, the plaintiffs alleged that the Meta Pixel was used on healthcare providers patient portals such that confidential health communications between patients and their providers were intercepted. 647 F. Supp. 3d 778, 784 (N.D. Cal. 2022). In *Google RTB*, the plaintiffs alleged that defendant collected and sold personal information, including "specific content of account holders' internet communications and highly detailed personal profile information about peoples' interests, race, religion, sexual orientation, and health status"—in contravention of its privacy policy. 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022). There are simply no comparable allegations here.

Additionally, UHS's alleged recording of Plaintiff's device IP address and unspecified browsing activity does not approach the type of "egregious" or "highly offensive" conduct required to state an invasion of privacy claim. *See* Mot. 24–25. Plaintiff fails to cite any authority finding that the recording of an internet users "researching of health-insurance products," Opp. 21, would amount to an egregious breach of social norms. Plaintiff claims that her browsing activity "can reveal intimate facts about age, health concerns, and financial circumstances," but nowhere in the Complaint does she allege that ***she*** ever provided any such information when using the Website.

Finally, Plaintiff's argument that the question of whether UHS's conduct "shocks the conscience" cannot be resolved at the pleadings stage, Opp. 23, is also without merit. To the contrary, courts routinely dismiss invasion of privacy claims at this stage when the alleged conduct is not objectively "highly offensive." *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021) (Shubb, J.) (dismissing a claim for invasion of privacy because the conduct was not "highly

offensive"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) (similar); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) (similar); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140 (S.D. Cal. May 8, 2024) (similar); *Esparza v. Kohl's Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) (similar). The Court should do the same here.

Plaintiff's claim for invasion of privacy should be dismissed.

## **CONCLUSION**

For these reasons, UHS respectfully requests that the Court grant UHS's motion to dismiss, in its entirety, with prejudice.

Dated: February 27, 2026

**HOGAN LOVELLS US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hoganlovells.com
jay.ettinger@hoganlovells.com

Adam Cooke (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
adam.a.cooke@hoganlovells.com

*Attorneys for Defendant*
*United Healthcare Services, Inc.*