UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ORIGINAL

| | |
|---|---|
| JOANNE MAGLIOCCA, Individually and on behalf of all others similarly situated, | Case No: 2:25-cv-03388-WBS-SCR |
| | Monday, March 30, 2026 |
| Plaintiff, | **MOTION HEARING** |
| v. | Pages 1 through 29 |
| UNITED HEALTHCARE SERVICES, INC., and DOES 1-100, inclusive, | HONORABLE WILLIAM B. SHUBB<br>UNITED STATES DISTRICT JUDGE<br>EASTERN DISTRICT OF CALIFORNIA |
| Defendant. | |

APPEARANCES:

For the Plaintiff: POTTER HANDY, LLP
100 Pine Street
Suite 1250
San Francisco, CA 94111
By: JAMES TREGLIO, ESQ.

For the Defendant: HOGAN LOVELLS US, LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
By: VASSI ILIADIS, ESQ.

**Abigail R. Torres, RPR, RMR, FCRR, CSR No. 13700**
**atorres@caed.uscourts.gov**
**501 I Street, Suite 4-100, Sacramento, California 95814**

*Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transcription.*

Sacramento, California; Monday, March 30, 2026

1:33 P.M. to 2:11 P.M.

-oOo-

THE CLERK: This is 25, civil, 3388, *Joanne Magliocca v. United States United Healthcare Services, Incorporated*.

Counsel, your appearances, please.

MR. TREGLIO: Good afternoon, Your Honor.

James Treglio, counsel for the plaintiff.

MS. ILIADIS: Good afternoon, Your Honor.

Vassi Iliadis, counsel for defendant, United Healthcare Services.

THE COURT: Good afternoon. You know, I had a copy of your brief with my notes on it, and I didn't bring it in, so I'm going to go out in just a minute and pick that up.

(Brief pause in proceedings.)

THE COURT: Sorry for the delay. My clerk brought me copies of your papers, but I wanted to have the ones that I made my notes on, so...

Who is going to be speaking on behalf of the defendants?

MS. ILIADIS: I am, Your Honor, Vassi Iliadis.

THE COURT: All right. Ms. Iliadis, this is your motion. You may proceed.

MS. ILIADIS: Thank you, Your Honor.

Your Honor, this case tries to convert commonplace,

widely used e-commerce technologies, technologies that are disclosed to visitors of the website through United's privacy policy, into per se violations of criminal wiretapping and anti-hacking statutes.

It does so without alleging, one, any concrete privacy harm here.

Two, any interception of the contents of communications as defined by those statutes.

And, three, any facts showing the required intent.

Now, plaintiff in this case tries to fill the gaps in the pleading through her opposition. She makes new allegations in her opposition that do not at all appear in the pleading. But Rule 12 requires the Court to evaluate the claims based on what plaintiff has pled, not on facts that plaintiff wishes she had pled.

And for those reasons, Your Honor, because there is no concrete privacy injury, because plaintiff cannot allege that the contents of her communications were intercepted and because there are no facts showing the required intent, there is no plausible basis to assert any of these claims against United.

THE COURT: Is your argument based on the statutes? Or is it based on constitutional standing?

MS. ILIADIS: No. Your Honor, the -- the first argument with respect to lack of concrete harm is a statutory standing argument that we're tying to the California Invasion

of Privacy Act. And, in particular, Section 632.7, which requires that a plaintiff demonstrate that she has been injured by a violation of CIPA.

Now, the argument is similar to an argument you would make under Article III. And so in many ways, the argument is the same, but the argument we have asserted in our motion is one of statutory standing.

THE COURT: Well, why did you choose to make a statutory argument if there is a constitutional deficiency? Wouldn't that be more deficient than a statutory defense?

MS. ILIADIS: It's a good argument, Your Honor, but Article III, as you know, is a nonwaivable defense. And plaintiff has to show standing at every stage in the case. And here, we decided to make an argument after removing the case from state court to federal court based on statutory standing.

We don't --

THE COURT: But that doesn't apply to all of the claims then, does it?

MS. ILIADIS: It doesn't apply to all the claims, but I think, Your Honor, if you found no concrete privacy injury in connection with the CIPA claim, you would also find no invasion of privacy is sufficient to state an invasion of privacy claim.

And then, similarly, under the computer data access and fraud claim, there needs to be some damage or loss. And so I think you can take the same line of reasoning and apply it to

at least three of the claims, in addition to CIPA, the statutory standing argument that we're making.

THE COURT: All right. Go ahead.

MS. ILIADIS: Now, with respect to the CIPA claim and the statutory standing argument, as I noted, the statute requires that plaintiff must demonstrate that she was injured by a violation of CIPA. And the injury here is an invasion -- has to be an invasion of a legally protected interest. Here, the right to privacy.

All plaintiff alleges in this case is that she visited what she describes, in paragraph 71, as a retail website, a public-facing retail website. She visited it in July of 2025. And she visited it to browse and review health insurances projects -- products.

She doesn't allege what she clicked. She doesn't allege that she entered any search terms into the site, that she provided any other sensitive or identifying information to the site. All she alleges is that she did not purchase any products or services. She went on the website. She browsed it. That's it.

So, Your Honor, taking those allegations, the fact that she only alleges non-sensitive browsing of a public website and fails to plead any allegations that she had given personal information or that embarrassing or invasive or, you know, private information was disclosed to third parties

through the use of e-commerce technologies means that she does not have any facts to support a cognizable privacy injury and --

THE COURT: So what is the case law that you're relying on for that proposition?

MS. ILIADIS: I think the principal case, Your Honor, is a recent decision out of the Ninth Circuit called *Popa v. Microsoft*. In there, the Ninth Circuit affirmed dismissal for a lack of statutory standing and found no concrete privacy injury based on allegations that e-commerce technologies collected non-sensitive information.

The example there in *Popa* that the Court considered was device IP address, mouse clicks, screen swipes, text inputs onto a website, and scrolling behaviors. So non-private or personal information.

THE COURT: All right.

MS. ILIADIS: And I'll note that the cases, Your Honor, that plaintiff relies on in her opposition predate the *Popa v. Microsoft* Ninth Circuit decision.

So, Your Honor, that is an on-point decision. And for those reasons, plaintiff does not have standing to assert her claims under CIPA.

THE COURT: But, again, is that just -- does that argument just relate to CIPA? Or does it relate to other claims?

MS. ILIADIS: It relates --

THE COURT: If you make it on a constitutional ground, then it applies to all the claims; right?

MS. ILIADIS: Yes, Your Honor.

THE COURT: And I'm having a hard time differentiating why *Popa* shouldn't apply to all the claims, and why it shouldn't be a constitutional argument.

MS. ILIADIS: It is a good point, Your Honor. We decided not to bring the Constitutional Article III argument in this case, and it doesn't mean that we're not intending to challenge plaintiff's Article III standing at later stages, but for now, before you in our motion, is the statutory standing argument.

THE COURT: But I don't even know if you can do that because I think -- isn't the Court's obligation to make sure that the Court has constitutional authority to hear the case?

This Court only has authority to hear cases and controversies arising out of the Constitutional laws of the United States. And what the case law has told us in that context is that there has to be a tangible injury.

MS. ILIADIS: And I -- and we would not concede that plaintiff has standing here. What we're saying is that plaintiff has not alleged a concrete privacy injury.

But you're correct, the briefing before you doesn't delve into Article III standing, jurisprudence, but, in fact,

the argument, but instead deals with the argument that plaintiff has not shown a violation through an injury based on -- sorry -- shown an injury through a violation of CIPA.

THE COURT: But if they haven't shown an injury at all, how does the Court have standing?

MS. ILIADIS: Well, Your Honor, we would be very glad for you to dismiss the case under Article III standing grounds. It's not an argument we made in our brief, however.

THE COURT: All right.

MS. ILIADIS: I think, Your Honor, if I may continue, if you don't find concrete privacy injury sufficient to state standing under CIPA, you, likewise, would not be able to find that plaintiff has alleged sufficient facts to show an invasion of privacy. Again, here, you know, there are no allegations that United affirmatively intruded into plaintiff's protected space.

She said she visited the website. She voluntarily visited that website. It's hard to understand and -- what reasonable expectation of privacy plaintiff would have over things that she voluntarily gives a website, such as a device IP address. And, therefore, we would argue that there is no invasion of privacy, as well. Same line of reasoning applies there.

THE COURT: Are you talking about the CDAFA now or the other one?

MS. ILIADIS: No, Your Honor. I was speaking about the common law invasion of privacy claim.

THE COURT: Did you address the CDAFA claim yet?

MS. ILIADIS: Not yet, Your Honor. I'm happy to do so.

THE COURT: All right.

MS. ILIADIS: If you'd like me to do so now.

So under the CDAFA, plaintiff has to allege damage or loss. And it has to be damage or loss that is specifically tied to the computer system, the network, program, or data.

And here, plaintiff has not alleged any loss to the computer data or network or system. She merely claims that as a direct and proximate result of defendant's purported violation of that statute, she has suffered damages. That's in paragraph 147 of the complaint.

That is not enough, Your Honor. It's a conclusory assertion. It simply restates the element of the claim. And plaintiff, likewise, could not allege cognizable damage or loss under this particular statute if it's premised on a purported invasion of privacy because it has to be tied to loss of the computer system, network, or data. And Courts have recognized that.

THE COURT: Well, the cases that you've cited and the ones that the Court has seen, don't seem to be focused on whether there's an injury under the CDAFA.

They seem be focused on whether there was some sort of a computer crime or hacking or somebody circumvented the technical barriers that were set up in the system. I don't see that here. But I don't see it to be the same argument that you're making now.

MS. ILIADIS: I think, Your Honor, if we take a step back, there are two arguments that we're making in our motion for why plaintiff fails to allege a violation of CDAFA.

The first argument is that she doesn't allege damage or loss. That is one element of this claim. She has to allege damage or loss to have standing to assert a privacy -- private right of action under this particular statute. And that damage or loss has to be to the computer system, network, or data.

The second element of the claim is what you were just speaking about, Your Honor, which is that plaintiff has to allege facts to show that United accessed her computer, quote, without permission.

So that's the second element of the claim. And we submit, Your Honor, based on our papers, that plaintiff has failed to allege either element of the claim.

THE COURT: All right. Go ahead.

MS. ILIADIS: If, Your Honor, I could turn back to the CIPA claim. If Your Honor finds that plaintiff has statutory standing under CIPA, then, you know, the -- the other key argument here, which is a required element of the claim, is

that plaintiff fails to allege that the contents of her communications with the website were intercepted.

And "contents" here has a very specific definition. It was articulated in the *Zynga* case by the Ninth Circuit. "Contents" under both CIPA and ECPA, the federal counterpart of the wiretapping provision, means any information concerning the substantive -- substance, purport, or meaning of a communication.

So it actually has to tell you what a user is trying to tell a website. And a good example of this, for example, is a search term that a user might input into a website. If you're, you know, browsing espn.com, for example, and you're searching a particular game, or something like that.

But what we have here is a body of case law that has found that basic browsing information, for example, a page view, a button click, how long a user is scrolling a website for, a device's IP address, that that is not the contents of a communication under CIPA or ECPA.

Now, despite what plaintiff says in her opposition, nowhere in the complaint does she allege that United intercepted her search requests or text input or any form submissions or URL paths or query strings, which she raises in her opposition.

She doesn't even allege that her URLs were being transmitted to third parties. And in any event, even if the

Court were to credit allegations made outside of the content of the complaint and credited the fact that plaintiffs says her URLs were transmitted to third parties through these e-commerce technologies, that's not enough. The URLs have to reflect some kind of substantive user input. It can't just be a user -- a URL alone.

And so because this is record information, browsing information, and not substantive communications with the website, plaintiff's allegations fail to state a claim under CIPA or ECPA based on that particular element of the claim.

THE COURT: All right. Anything else you wanted to say?

MS. ILIADIS: Your Honor, I think, you know, one argument that is -- there are several arguments in my brief, and I'm happy to address any of them as appropriate.

But one argument I'd like to discuss with this Court in particular is under Section 638.51 of CIPA, this is the "pen registered" provision, so we're out of wiretapping now.

And our argument in our brief makes clear that this statutory framework and history show that the California legislature intended to target telephone-style surveillance with this particular provision. It did not intend to cover the routine operation of commercial websites or analytical software on those websites.

And we make this point on pages 13 through 16 of our

brief, and I think it's an important argument, Your Honor, because this Court in 2010, I think in the *AtPac* decision, it was assessing another statute, but it described the rule of lenity as a statutory construction vehicle.

And Your Honor said that -- you know, you cautioned against interpreting criminal statutes too broadly and in surprising ways. And here, what we are seeing is plaintiff trying to use a statute that was really aimed to help law enforcement facilitate the recording of communications through telephone-style surveillance and apply it to e-commerce technologies that are already governed by a modern statutory framework called the CCPA, the California Consumer Privacy Act.

So it doesn't make sense, Your Honor, based on both the legislative history, the rule of lenity, the purpose of this statute to not interpret this statute in conjunction with the CCPA, which already governs this kind of technology.

So I think it's a key -- key issue, Your Honor. And it's actually currently up on appeal in two different cases before State Appellate Courts. The *Variety Media* appeal, which we attached to our motion to dismiss briefing, which is before the Second Appellate District.

But I wanted to raise it, Your Honor, because I think it is an important argument, and it is one that you also cautioned against in interpreting statutes too broadly to apply to the kinds of scenarios that they were never intended to

apply to.

THE COURT: All right. Anything else?

MS. ILIADIS: Let me look through my notes, Your Honor. One other argument, and I appreciate your time, Your Honor.

The other argument is on the Federal Wiretapping Act, ECPA. We already discussed the contents element. But this really has to do with the "one-party consent" defense which -- which United raises in our motion.

ECPA is a "one party consent" law. United is a party to the communication. They've consented to it. There cannot be any unlawful interception by a party to the communication. That much is clear. We raised it in our moving papers.

Plaintiff comes back in the opposition and says that that defense doesn't apply because of something called the Crime Tort Theory.

But under this particular theory, Your Honor, plaintiff has to allege that United intended to commit an independent crime or tort at the time of the alleged interception.

Plaintiff's crime tort theory is new. It was not pled in the Complaint. It shouldn't be credited here. But in any event, plaintiff cannot allege that United's primary motivation in using widely used e-commerce technologies on its website was to injure plaintiffs tortiously.

There's some reference in the opposition to violations of HIPAA and the Confidentiality of Medical Information Act under California law --

THE COURT: Does anybody ever use the federal wiretap statute in the context of one of these cases? And there are hundreds of these cases.

MS. ILIADIS: Yes.

THE COURT: You haven't mentioned that. This isn't the first plaintiffs that got the idea of bringing this type of claim.

Are there any cases that have even talked about the federal wiretap statute in connection with these claims?

MS. ILIADIS: There are cases, Your Honor, and I believe that we have addressed them in our brief. In particular, this argument about the -- about the consent offense.

So there's the *In re Yahoo mail* litigation case out of the Northern District in 2014, which makes clear that ECPA is a one-party concept law --

THE COURT: No. My question is: In connection with one of these Internet cases where somebody is complaining about the fact that they went on somebody's web page, and they made use of some of the information that they got by virtue of that use, has anybody ever even argued federal wiretap --

MS. ILIADIS: There definitely have been arguments

by --

MR. TREGLIO: I will keep my mouth shut.

THE COURT: Not in his head. It never occurred to me, frankly. We think of it is as a wiretap statute, but --

MS. ILIADIS: Yeah. There is -- there have been -- I mean, certainly, plaintiffs have argued and alleged violations of ECPA across the country in connection with the use of e-commerce technologies or web-tracking technologies, so there's plenty of complaints.

I would direct the Court to the *Zarif v. Hwareh.com* decision out of the Southern District in 2025, where the Court found that the crime-tort exception in this context, which plaintiffs are alleging, invalidates the "one-party consent" rule.

That Court found that crime-tort exception was inapplicable where the defendant's primary motivation was to make revenue through --

THE COURT: I'm not talking about the crime-tort exception. I'm talking about the federal wiretap statute.

MS. ILIADIS: Yes, Your Honor, so the crime-tort exception.

THE COURT: Okay. So what did the Court hold in that case?

MS. ILIADIS: So in that case -- and, Your Honor, this is on page 10 of our reply brief -- the defendant, as we did

here, raised the "one-party consent" defense to ECPA, to the Federal Wiretap Act.

And the plaintiff went back and said, "No, no, no." You can't raise that because you intended to commit a tort in facilitating the interception of the website users' information. And the Court said that the crime-tort exception to the ECPA --

THE COURT: Okay. I --

MS. ILIADIS: -- is inapplicable --

THE COURT: -- I don't want to hear about the crime-tort exception anymore. And I admit, I overlooked this argument when I read your brief.

What is the language of the federal wiretap statute that you're relying on?

MS. ILIADIS: For the "one-party consent" defense, Your Honor, I will read it to you --

THE COURT: I'm not talking about the "one-party defense." I'm talking about what -- what's the violation of the federal wiretap statute that would apply to these facts?

MS. ILIADIS: Well, we would argue that there's no violation of the federal wiretap statute. I can cite what plaintiff alleges in the Complaint.

THE COURT: Well, just tell me -- can I -- can I -- I'll tell you. I'm not going to take your time with it.

Give me the citation for the federal wiretap statute.

MS. ILIADIS: Sorry. It is -- I have the statute, 18 U.S.C. § 2510.

THE COURT: Okay.

MS. ILIADIS: And the exception that plaintiff raises is 18 U.S.C. 2511. And the -- sorry, Your Honor, the interception -- so what I gave you was the overarching statutory cite.

18 U.S.C. 2520 is what plaintiff alleges in the Complaint. "Any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter, may in a civil action recover from the person or entity other than the United States" --

THE COURT: Okay. What's the violation that -- of the statute? That's 2510; right?

MS. ILIADIS: 2520.

THE COURT: No. But that's -- this 2520 is the one that gives the civil right of action.

MS. ILIADIS: Yes.

THE COURT: What's the -- what's the wiretap statute that makes it wrong or a crime to --

MS. ILIADIS: 2511.

THE COURT: 2511. Okay. Just a minute.

MS. ILIADIS: And Your Honor, there is case law that supports -- that when you are a party to the communication, you cannot have wiretapped your own communication, which is what

our argument is --

THE COURT: I'm just -- I'm just -- as I said, I admit I missed this in your brief, and I want to make sure I understand it.

When somebody goes on somebody else's Web page, there's an argument that the person who owned the Web page is the victim or is the culprit?

MS. ILIADIS: Plaintiff's argument is that the website operator, United, violated the Federal Wiretap Act by employing e-commerce technologies on its website.

THE COURT: Okay. I'll just say right now, that's absurd, but you can make your argument.

MS. ILIADIS: No, Your Honor. It's not -- that's my -- I agree with --

THE COURT: Let them make their argument.

MS. ILIADIS: I agree with the Court's quick judgement.

(Cross-talking.)

THE COURT: I don't even want know if I want to address it, it's so absurd.

Okay. Go ahead. You're on.

MR. TREGLIO: Your Honor --

THE COURT: If that's your strong argument, I think we need -- make sure it's --

MR. TREGLIO: Well --

THE COURT: -- of it.

MR. TREGLIO: -- well, Your Honor, just to point out that some of the cases that -- where federal wiretapping has been alleged in similar incidents would be *Doe v. Kaiser*, *In re Meta Tracking*, and then also *Doe v. Google*, which are all pending in the Northern District right now. We can provide the Court with citations later. We didn't have them in our brief.

But those are cases where federal wiretapping was alleged as part of this -- this issue.

THE COURT: You can allege anything. Are any of those cases where federal wiretapping was found to be --

MR. TREGLIO: Yes.

THE COURT: -- violated? Okay. Good. Give me those cites.

MR. TREGLIO: I will give you those cited --

THE COURT: No, no. Don't give them to me later. Give them to me now.

MR. TREGLIO: Oh, okay.

THE COURT: If there's any strength to your argument at all, you should be prepared to give me those cases because it makes everything else moot. This is a wiretap case from beginning to end, so give me your cases.

MR. TREGLIO: I -- let's see, Your Honor. Hold on. See if I can find it very quickly. I'd be happy to do that, Your Honor.

THE COURT: Why didn't you cite them in your brief if --

MR. TREGLIO: And Your Honor, that -- because --

THE COURT: One of the reasons -- one of the reasons I -- I may not be prepared to understand this argument is if you didn't make it in your briefs.

MR. TREGLIO: Your Honor, I mean, in a scenario where -- I think you have an issue where the parties -- the forest for the trees, and so we were focusing on defendant's arguments in there.

Whereas, we could have provided the Court with a broader argument there. But with that said, Your Honor, in addition to everything else, I should note that the -- you know, if there is a standing issue that -- that's been following around there, as the Court, sort of, indicated, that the appropriate measure here would be to just remand the case back to state court.

If there's no Article III standing, and the Article III standing is the same level as a statutory standing, as they're claiming, then let's go back to state court.

THE COURT: Well, there's no motion to remand it to state court.

MR. TREGLIO: Right. I mean --

THE COURT: But what -- if there's no standing, this Court can simply dismiss it, and if the parties want to refile

it in the State Court, I suppose they can.

MR. TREGLIO: Right. And that would be another option, Your Honor, but that -- that would be the -- my first thought. But to explain, kind of, what's going on, these are -- these are third-party trackers that are being added onto the website, the website that's being used for people who are looking to purchase health insurance.

And so it's not what United is collecting, in and of itself, but it's rather what is being collected by Microsoft, by Meta, by Google, and Adobe.

THE COURT: But they're not defendants in this case.

MR. TREGLIO: No, they're not defendants in this case because they're being sued in other actions, but it is -- it is -- it is United Healthcare that's putting these trackers on their website.

It's United that has control of its website and gather -- in allowing these third-party trackers. They're, in fact, in some cases -- they're the ones who are adding them onto their website. And they're doing that for the specific purpose of, once someone is on the website and looking at -- and browsing for specific forms of health insurance, that after they leave the website, they're going to see the same ad for the same product over and over and over again.

So that person is going to see on Facebook, on Google, on other documents advertisements of United Healthcare or not

just United Healthcare, in this instance, but also other health insurance companies, which is alleged in the Complaint.

Let me see if I can pull this up. I apologize.

THE COURT: What's the harm? What's the injury? That's your primary argument.

MR. TREGLIO: That would be our primary argument, is that the injury that's being collected is the information of these individuals who are seeking to apply for health insurance.

THE COURT: All right. So somebody went on the -- on somebody's web page, and they were interested in acquiring health insurance. And as a result of that, they're going to receive some more ads about health insurance?

MR. TREGLIO: Well -- and then what's also done is there's -- there's going to be a creation of a user profile that allows that -- that -- that is then going to be -- then going to be tracked across all other platforms.

And so that -- that's where -- and that's also where the pen register comes in. There's going to be a geographic profile that's created that's connected to the IP address that's connected to their actions.

And so that's where, again, the pen register aspect comes into, but it's also wiretapping, because they are engaged in a conversation with United Health, and they're not aware that it's being recorded by third parties. It's this

third-party interception.

THE COURT: I'm sorry.

Okay. Go ahead.

MR. TREGLIO: So and -- so that -- that would be the basics. Now the -- in addition to -- I'll just point out a few of the cases. These are post-*Popa* cases dealing with very similar issues. And noting the difference, *Popa* was a case involving the -- *Popa v. Microsoft* was dealing with Pennsylvania wiretapping statute, and at a pet food supplier.

There's a couple other cases that have come up more recently post-*Popa* that I think would be -- would assist the Court in its determination on this.

So *Gabrielli v. Haleon*, which is 2025 WL2494368 at star 6 through star 8, I think they -- that provides -- and *Haleon*, I think, is important -- from out of -- it's from Judge Orrick's courtroom. It's important because *Haleon* was a medical provider in very much the same way that United Health is a health insurance provider. So it's the same concept in that.

You also have *Camplisson v. Adidas America*. That is 809 F.Supp.3rd 1095 at 1106. That's out of the Southern District of California. That's a 2025 decision as well.

There is *Krzyrek* v. -- that is K-r-y -- sorry -- K-r-z-y-r-e-k -- *v. OpenX Technologies*. That is northern -- Northern District of California, 2026 decision. 2026 WL206855.

THE COURT: Are these in your brief?

MR. TREGLIO: They are not in my brief, Your Honor. These were things I found this morning in preparation for this argument.

But with that said, Your Honor --

THE COURT: Is there some reason you couldn't have found them when you filed your brief?

MR. TREGLIO: Your Honor, no, there's no reason why we couldn't have found them --

THE COURT: But, I mean, there has to be a time when -- when we -- you're asking me to make a decision. I don't take cases under submission for extended periods of time. I hear oral argument, and then I decide the motion.

And we can't have a system where you come in and give me all kinds of new cases at the time of oral argument, and you expect me to -- to read them and understand them and rule on the motion. I can't do that.

MR. TREGLIO: Okay. Your Honor, I apologize for that, Your Honor. But, regardless, I think these -- to go forward, because these are -- these are sort of -- they do mirror the cases that we cite to in our brief. And it deals with, again, the amount of information, and I think that that's being provided and that distinction.

So *Popa* was not -- it did not stand for the position that no e-commerce -- that any e-commerce added to a website

could never be deemed to be in violation of wiretapping statutes. There are plenty of cases both before Popa and now after *Popa* that have stood for the other proposition.

It's just the volume of information. And if the Court feels like the Complaint is not appropriate or doesn't add enough information, we certainly would -- we would be open to the idea -- you know, we would ask for the Court to give us the right to amend, add that information in; we certainly can.

And so -- and so with that, Your Honor, I don't think I have anything else.

THE COURT: Do you think the Court is precluded from considering the Constitutional argument?

MR. TREGLIO: No. No, Your Honor. I think -- I think -- I think if this Court believes that there is an issue regarding standing, particularly under Article III, then that -- that question has to be answered first to be able --

THE COURT: That's what I was trying to suggest to --

MR. TREGLIO: Right.

THE COURT: -- to your opponent here. I was trying to understand why she didn't make the argument.

MR. TREGLIO: Right.

THE COURT: Would you like the -- would you like to respond to that argument now?

MR. TREGLIO: Yes, Your Honor.

So I -- I -- so -- there is -- all right. I think

going back to the question of injury, the injury itself is defined as any communication that's being recorded without -- without my client's permission.

THE COURT: Well, that may be for purposes of some statute, but for purposes of --

MR. TREGLIO: Article III.

THE COURT: -- Article III standing, is that the definition of injury?

MR. TREGLIO: Your Honor, that is for purposes of -- for purposes of CIPA, I believe it is enough. Because it is an invasion of a statutory right that was created.

And so that -- and so under *TransUnion*, certainly, that could be -- that invasion of a statutory right would be sufficient. However, again, it wasn't an issue raised in the brief, and so we -- we didn't brief it, but I think that --

THE COURT: I'm looking at the Supreme Court's decision in *TransUnion v. Ramirez*.

MR. TREGLIO: Huh.

THE COURT: It's a recent decision in 2021. And they define constitutional standing in terms that the plaintiff must show that he suffered an injury, in fact, that is concrete, particularized, actual, or imminent.

So that seems to be the Constitutional definition of injury. How do you argue that plaintiff in this case sustained injury in that sense?

MR. TREGLIO: Your Honor, I don't -- at this time, I'm not prepared to respond to that. And it's not to say that I cannot. I had -- I've certainly had CIPA cases where I made that very argument to Courts saying, "I need to be remanded," and then that was rejected. And I'm -- I'm trying to remember the case law on that.

But I would say, certainly, Your Honor, if this Court believes that there is no Article III standing, then -- then it would be appropriate to either dismiss this case or remand it back to State Court.

THE COURT: All right. All right.

Anything else either side would like to say?

MS. ILIADIS: Nothing further, from me, Your Honor. Thank you for your time.

MR. TREGLIO: Nothing further, Your Honor.

THE COURT: All right. Thank you.

The case is taken under submission.

MS. ILIADIS: Thank you.

(The proceedings were adjourned at 2:11 p.m.)

-oOo-

**C E R T I F I C A T E**

I, Abigail R. Torres, certify that I am a duly qualified and acting Official Court Reporter for the United States District Court; that the foregoing is a true and accurate transcript of the proceedings as taken by me in the above-entitled matter on 3/30/2026; and that the format used complies with the rules and requirements of the United States Judicial Conference.

/s/ Abigail R. Torres, CSR No. 13700 Date: 4/30/2026
_________________________________ _______________
Registered Professional Reporter
Registered Merit Reporter
Federal Certified Realtime Reporter