**THE RIGHT TRIAL LAWYERS**
Mark D. Potter (SBN 166317)
mark@trtl.law
James M. Treglio (SBN 228077)
jimt@trtl.law
Isabel Rose Masanque (SBN 292673)
isabelm@trtl.law
1410 E Winding Way, Suite B
Friendswood, Texas 77546
Phone: (415) 534-0530
Fax: (888) 422-5191

Attorneys for Plaintiff, on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE MAGLIOCCA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED HEALTHCARE SERVICES, INC., a Delaware corporation, and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 2:25-cv-03388-WBS-SCR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Hearing Date: August 17, 2026<br>Hearing Time: 1:30 p.m.<br>Courtroom: 5 – 14th Floor<br><br>Hon. William B. Shubb |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 3

A. The FAC Adequately Pleads Article III Standing Based on Unauthorized Disclosure of Plaintiff's Medicare Shopping Activity ........ 3

B. The FAC Pleads Pre-Consent Third-Party Interception Under CIPA Section 631(a) ........ 6

1. The FAC adequately pleads interception of contents. ........ 6

2. The FAC adequately pleads third-party interception and Defendant's knowing participation under section 631(a). ........ 7

C. The FAC Adequately Pleads a Section 638.51 Pen-Register Claim ........ 9

D. The FAC Adequately Pleads Direct Liability Under the Wiretap Act ........ 10

E. The FAC Adequately Pleads CDAFA Liability ........ 12

1. The FAC plausibly alleges damage or loss. ........ 12

2. The FAC plausibly alleges access without permission. ........ 13

F. The FAC Adequately Pleads a California Constitutional Privacy Claim ........ 13

G. Dismissal with Prejudice Is Unwarranted; Plaintiff Should Be Granted Leave to Amend ........ 15

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Ambriz v. Google LLC*, No. 23-cv-05437-RFL, 2025 WL 830450, at *2–3 (N.D. Cal. Feb. 10, 2025) ..... 2, 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..... 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–70 (2007) ..... 3

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–59 (9th Cir. 2022) ..... 3, 6, 11

*Brown v. Google LLC*, 685 F. Supp. 3d 909, 932–39 (N.D. Cal. 2023) ..... 12

*Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–20, 1126–31 (9th Cir. 2020) ..... 2, 4, 5

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072–79 (N.D. Cal. 2023) ..... passim

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017) ..... 4, 5

*Flanagan v. Flanagan*, 27 Cal. 4th 766, 775–81 (2002) ..... 10

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–93 (2011) ..... 14

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) ..... 9

*Harris v. iHeartMedia, Inc.*, No. 25-CV-6038-EKL, 2026 WL 247875, at *2–3 (N.D. Cal. Jan. 29, 2026) ..... 9

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 295 (2009) ..... 13

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–40 (1994) ..... 13

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–601, 606–07 (9th Cir. 2020). 2, 4, 5, 14

*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946–47 (N.D. Cal. 2022) ..... 14

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795–99 (N.D. Cal. 2022) ..... 4, 6, 7, 14

*In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014) ..... 6, 9

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023) ..... 9

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022)2, 6, 7, 11

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 125–29, 137 (2006) ..... 3, 6, 8

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003, 1014–15 (9th Cir. 2018) ... 3, 6, 11

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ..... 11

*Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ..... 2

*Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) ........ 10

*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *3–5 (N.D. Cal. Dec. 12, 2024) ........ 9

*Moore v. Rodriguez*, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) ........ 15

*Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) ........ 3

*Nelson v. Reddit, Inc.*, No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *3–7 (S.D. Cal. Feb. 17, 2026) ........ 9

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014) ........ 3, 6, 11

*Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272–75 (9th Cir. 2019) ........ 4, 5

*People v. Avery*, 27 Cal. 4th 49, 57–58 (2002) ........ 3

*People v. Hawkins*, 98 Cal. App. 4th 1428, 1438–39 (2002) ........ 8, 13

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ........ 1, 4, 6

*Ribas v. Clark*, 38 Cal. 3d 355, 359–62 (1985) ........ 6, 8

*Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025) ........ 12

*Semien v. PubMatic Inc.*, No. 25-CV-3164-SI, 2026 WL 216333, at *10–11 (N.D. Cal. Jan. 27, 2026) ........ 9

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1052–53 (N.D. Cal. 2025) ........ 11

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928–31 (N.D. Cal. 2024) ........ 9

*Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231–37 (1998) ........ 13, 14

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025) ........ 6, 8, 11

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 340–41 (2016) ........ 2

*Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) ........ 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–27 (2021) ........ 2, 3, 5

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042–43 (9th Cir. 2017) ........ 4

**Statutes**


18 U.S.C. § 2510(8) .......... 13

18 U.S.C. § 2511(1)(a), (c), (d) .......... 14

18 U.S.C. § 3127(3)–(4) .......... 12

Cal. Civ. Code § 1798.175 .......... 13

Cal. Penal Code § 502(b)(1) .......... 15

Cal. Penal Code § 502(b)(8) .......... 15

Cal. Penal Code § 502(c)(1), (2), (4), (6), (7) .......... 15

Cal. Penal Code § 502(e)(1), (b)(11) .......... 16

Cal. Penal Code § 631(a) .......... 7, 10

Fed. R. Civ. P. 12(b)(1) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 3

Fed. R. Civ. P. 12(d) .......... 4

Fed. R. Civ. P. 15(a)(2) .......... 4

Fed. R. Civ. P. 8(a)(2), 8(d)(1) .......... 3

Rule 15(a)(2) .......... 19

## I. INTRODUCTION

Defendant United Healthcare Services, Inc. ("Defendant") characterizes Plaintiff's Medicare supplement inquiry as ordinary, nonprivate browsing on a public website. The First Amended Complaint ("FAC") alleges far more. Plaintiff did not merely load a homepage. She clicked a Medicare-related advertisement, went to Defendant's Medicare pages, entered her ZIP code, selected Yuba County, clicked "View Plans," reviewed Medicare supplement plans and rates, selected Plan G, explored AARP endorsed Medicare supplement offerings, and clicked "Learn More." FAC ¶¶ 89–94. In context, those actions communicated a concrete insurance-shopping inquiry: Plaintiff was researching supplemental Medicare coverage, local plan availability, and rates.

Unlike *Popa*, the FAC alleges a specific Medicare supplement and Plan G rate-shopping sequence, pre-consent disclosure to nonparty ad-tech vendors, persistent identifiers linking that inquiry to a browser or device, and post-visit retargeting. FAC ¶¶ 66–70, 89–98. That is not ordinary observation of nonsensitive browsing on a single webpage. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). It is the disclosure of a particular Medicare coverage inquiry to outside vendors before any meaningful choice.

The FAC further alleges that Defendant caused third-party tracking technologies to execute before any meaningful consent opportunity, including advertising and analytics scripts, cookies, pixels, canvas-fingerprinting scripts, and a SessionCam session recorder. FAC ¶¶ 43–58, 62–69. Those trackers allegedly generated and transmitted content-bearing URLs, page titles, event names, clickstream events, ZIP related location signals, plan selection signals, rate review signals, persistent identifiers, and browser or device identifiers tied to Plaintiff's Medicare-plan inquiry. FAC ¶¶ 45–49, 57–58, 67–69, 94. The FAC also alleges those technologies fired before any cookie banner, consent pop-up, or comparable opportunity to grant, deny, or tailor consent. FAC ¶¶ 66–70, 102.

Those allegations cure the defect identified in the dismissal of the prior complaint. The FAC no longer pleads generic, context-free browsing on a single website. It pleads a specific Medicare supplement and rate inquiry; pre-consent disclosure of interaction-level data to outside ad-tech vendors; persistent identifiers linking that inquiry to a browser or device; and post-visit targeted

health insurance advertising consistent with disclosure and retargeting. FAC ¶¶ 89–98. Courts addressing modern online tracking and interception allegations have repeatedly held such allegations sufficient at the pleading stage where plaintiffs allege contemporaneous, undisclosed third-party acquisition of user communications or content-bearing URLs, especially before valid consent. See *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599, 605–08, 610 (9th Cir. 2020); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–20, 1126–31 (9th Cir. 2020); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1–2 (9th Cir. May 31, 2022); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1072–80 (N.D. Cal. 2023); *Ambriz v. Google LLC*, No. 23-cv-05437-RFL, 2025 WL 830450, at *2–3 (N.D. Cal. Feb. 10, 2025).

Defendant's motion depends on decontextualizing the FAC. It emphasizes that Plaintiff alleges one visit to publicly accessible pages, no enrollment, no submission of name or address, and no diagnosis. But the issue is not what Plaintiff failed to disclose. The issue is what Defendant allegedly caused third parties to intercept and use. A Medicare supplement inquiry tied to ZIP or county, local rate review, Plan G selection, AARP-endorsed Medicare content, page titles, event names, persistent identifiers, and retargeted health insurance advertising plausibly reveals private insurance interests and coverage preferences even without diagnosis or payment information. FAC ¶¶ 89–98. At the pleading stage, Defendant cannot defeat Plaintiff's privacy theory by isolating individual data fields from the pleaded communication and ignoring the context in which those fields allegedly revealed private information. See *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–27 (2021); *In re Facebook*, 956 F.3d at 598–601, 606–07; *Campbell*, 951 F.3d at 1117–20.

The motion should be denied. At minimum, any perceived deficiency is curable and does not warrant dismissal with prejudice.

## II. LEGAL STANDARD

On a facial challenge under Fed. R. Civ. P. 12(b)(1), the Court accepts the FAC's factual allegations as true and draws reasonable inferences in Plaintiff's favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Article III requires a concrete and particularized injury, traceability, and redressability. *TransUnion*, 594 U.S. at 423–27; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 340–41 (2016). At the pleading stage, Plaintiff need only plausibly allege those elements.

Under Fed. R. Civ. P. 12(b)(6), the Court asks whether the FAC states a plausible claim for relief, accepting well-pleaded facts as true and drawing reasonable inferences in Plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–70 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and "[n]o technical form is required." Fed. R. Civ. P. 8(a)(2), 8(d)(1). The Court does not resolve factual disputes about tracker functionality, timing, consent, or third-party participation unless the defense appears on the face of the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003, 1014–15 (9th Cir. 2018). If matters outside the pleadings are presented on a Rule 12(b)(6) motion and not excluded, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Online consent turns on conspicuous notice and unambiguous manifestation of assent, and is rarely resolved against a plaintiff on the pleadings absent a clear clickwrap or comparable record. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–59 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014).

Defendant's lenity rhetoric does not alter that analysis. Even putting aside that lenity is a last-resort canon, see *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998); *People v. Avery*, 27 Cal. 4th 49, 57–58 (2002), California courts interpret CIPA in light of the State's strong privacy policy and the statute's protective purpose against secret monitoring and recording. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 125–29, 137 (2006).

If the Court finds any part of the FAC insufficiently detailed, leave to amend should be freely granted. Fed. R. Civ. P. 15(a)(2).

## III. ARGUMENT

### A. The FAC Adequately Pleads Article III Standing Based on Unauthorized Disclosure of Plaintiff's Medicare Shopping Activity

The FAC alleges a concrete privacy injury closely related to traditionally recognized invasions of privacy, including intrusion upon seclusion and disclosure of private information. *TransUnion*, 594 U.S. at 424–27. The Ninth Circuit has already held that unauthorized tracking and disclosure of online activity can satisfy Article III where the conduct intrudes on private online

activity and discloses it to third parties. *In re Facebook*, 956 F.3d at 598–99, 603–08; *Campbell*, 951 F.3d at 1112–13, 1117–20. Other Ninth Circuit decisions likewise hold that invasion of a substantive privacy interest is concrete even without financial loss or other consequential harm, including where the claim is based on unauthorized disclosure to a third party. See *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th Cir. 2017); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272–75 (9th Cir. 2019); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1042–43, 1049 (9th Cir. 2017). Nothing in Article III requires Plaintiff to plead identity theft, out-of-pocket loss, completed enrollment, or a medical diagnosis in a privacy-tracking case.

The FAC cures the earlier standing concern because, unlike *Popa*, it alleges a private insurance-shopping communication, not generic browsing. Plaintiff alleges she clicked through a Medicare advertisement, entered a Medicare-plan flow, entered her ZIP code, selected Yuba County, clicked "View Plans," reviewed Medicare supplement plans and rates, selected Plan G, explored AARP-endorsed Medicare offerings, and clicked "Learn More." FAC ¶¶ 89–92. Those allegations reveal Medicare-related coverage interests, county-specific plan and rate research, and consideration of a specific supplemental coverage type. Health insurance shopping is sensitive even when it does not reveal a diagnosis. Courts have repeatedly recognized that descriptive URLs, button names, click events, and similar interaction-level data may reveal the substance, purpose, or meaning of a user's communication. See *Doe v. Meta*, 690 F. Supp. 3d at 1072–77; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795–99 (N.D. Cal. 2022).

The FAC also alleges content-bearing transmissions. The data allegedly duplicated to third parties included full or partial page URLs, page titles, event names, clickstream events, ZIP related location signals, plan selection signals, rate review signals, persistent identifiers, and browser or device identifiers corresponding to Plaintiff's Medicare supplement flow. FAC ¶ 94. Those allegations plausibly describe an unauthorized disclosure of the substance of Plaintiff's inquiry, not merely anonymous technical traffic.

The FAC further alleges downstream corroboration: after visiting the Website, Plaintiff allegedly encountered Defendant-branded and other health-insurance ads on websites and social-media platforms. FAC ¶ 97. Those ads are not necessary to establish standing, but they support a

reasonable inference of disclosure, linkage, and downstream use. See *In re Facebook*, 956 F.3d at 600–01; *Campbell*, 951 F.3d at 1120.

The FAC also supports injunctive standing. Plaintiff alleges that she remains interested in researching Medicare supplement coverage and rates, that such plans and pricing change over time, and that she would use Defendant's Website again if she could do so without covert third-party interception or with a lawful and meaningful prior choice. FAC ¶ 98. She seeks injunctive relief requiring Defendant to stop unauthorized interception and disclosure, disable unauthorized code and systems, and purge unnecessary data. FAC Prayer ¶ 8. That is sufficient at this stage.

Defendant's one visit, no diagnosis, and no enrollment framing does not defeat standing. Privacy harm turns on context. A single unauthorized dissemination can be concrete where the disclosed information and circumstances bear a close relationship to traditionally recognized privacy or reputational harms; actual third-party disclosure, and the nature of the information disclosed, matter. *TransUnion*, 594 U.S. at 425–27; *In re Facebook*, 956 F.3d at 598–601, 606–07; *Eichenberger*, 876 F.3d at 983–84. Plaintiff does not claim injury from a ZIP code or IP address in isolation. She alleges that Defendant caused third-party vendors to receive and use a combined record of her Medicare supplement shopping path, local rate review, Plan G selection, page titles, URLs, event names, identifiers, and targeted post-visit health insurance advertising before any meaningful consent opportunity. FAC ¶¶ 66–70, 89–100. That is enough to plausibly allege concrete injury.

Nor does the absence of name or street address defeat injury. The FAC alleges persistent identifiers, browser or device identifiers, cookies, and fingerprints capable of linking Plaintiff's Medicare inquiry to her browser or device and to vendor profiles across sessions. FAC ¶¶ 52–58, 94–97. Article III does not require Plaintiff to plead disclosure of a completed application file where the FAC alleges unauthorized collection, use, transmission, or retention of private information sufficient to invade a substantive privacy interest. See *In re Facebook*, 956 F.3d at 599–601; *Patel*, 932 F.3d at 1272–75. *Popa* does not compel dismissal because the FAC here alleges a specific, sensitive insurance inquiry, pre-consent third-party disclosure, persistent identifiers, and downstream retargeting—not merely nonsensitive browsing on a single webpage. *Popa*, 153 F.4th

at 787, 791–92, 794–95. Consistent with Plaintiff's allegations here, courts have held or recognized that session-recording and analogous third-party tracking code can be sufficient to plead CIPA/wiretap interception where the technology captures website communications without valid prior consent. See *Javier*, 2022 WL 1744107, at *1–2; *Doe v. Meta*, 690 F. Supp. 3d at 1075–80; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793–99; *Smith*, 2025 WL 1085169, at *3–5.

### B. The FAC Pleads Pre-Consent Third-Party Interception Under CIPA Section 631(a)

CIPA section 631(a) prohibits willful, unauthorized reading or learning of the contents or meaning of a communication while in transit and extends to one who "aids, agrees with, employs, or conspires with" another to do so. Cal. Penal Code § 631(a). California's policy against covert eavesdropping is especially strong. See *Kearney*, 39 Cal. 4th at 125–29, 137; *Ribas v. Clark*, 38 Cal. 3d 355, 359–62 (1985). Defendant cannot win on consent at the pleading stage. The FAC alleges that the challenged trackers fired immediately on page load before any cookie banner, consent pop-up, or comparable mechanism to grant, deny, or tailor consent. FAC ¶¶ 66–70, 102. A passive footer privacy-policy link and generalized disclosures do not establish affirmative prior consent as a matter of law to real-time duplication of Medicare plan and rate communications to advertising, analytics, fingerprinting, and session-replay vendors. See *Berman*, 30 F.4th at 856–59; *Nguyen*, 763 F.3d at 1178–79; *Khoja*, 899 F.3d at 998–1003.

#### 1. The FAC adequately pleads interception of contents.

Defendant argues that an IP address or ZIP code, standing alone, is not content. Plaintiff does not dispute that proposition. The question is whether the allegedly intercepted communications, taken as pleaded, revealed the "substance, purport, or meaning" of Plaintiff's communication. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014). The FAC plausibly alleges that they did.

Plaintiff alleges that her Medicare-plan path communicated that she was evaluating Medicare supplement availability and rates in Yuba County, considering Plan G, and exploring AARP endorsed coverage. FAC ¶¶ 89–94. That meaning was conveyed through page titles, URL

paths, event names, clickstream events, ZIP related location signals, plan selection signals, rate review signals, and persistent identifiers. FAC ¶ 94. Courts confronting analogous tracker allegations have recognized that descriptive URLs, page titles, button text, event data, and similar website-interaction signals may constitute contents when they reveal the substance or meaning of the user's communication rather than mere addressing information. *Doe v. Meta*, 690 F. Supp. 3d at 1072–77; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795–96.

Whether the plan pages were publicly accessible does not change that result. The protected communication is Plaintiff's act of requesting and exploring those pages in a way that conveyed a concrete private meaning—namely, her Medicare supplement and rate inquiry—not the mere abstract existence of public-facing plan information on Defendant's server.

The FAC is also concrete. It identifies the user-action labels and flow signals at issue—"View Plans," "Plan G," "Medicare plans endorsed by AARP," and "Learn More." FAC ¶ 91. It identifies pre-consent advertising and tracking domains operating at page load, including assets.adobedtm.com, dpm.demdex.net, adobedc.demdex.net, and securepubads.g.doubleclick.net. FAC ¶ 55. Defendant's own motion underscores the content-bearing nature of the plan pages by citing a plan-summary URL path that includes geographic and plan-specific parameters. Those allegations make it plausible that the duplicated transmissions reflected Plaintiff's actual Medicare plan and rate actions.

Rule 8 does not require packet-capture exhibits, literal payload strings, or vendor-by-vendor request logs before discovery. Those details are largely within Defendant's and its vendors' possession. Plaintiff has alleged the categories of data transmitted, the vendors involved, the pre-consent timing, and the Medicare-plan actions those transmissions reflected. That is enough. See *Javier*, 2022 WL 1744107, at *1–2; *Doe v. Meta*, 690 F. Supp. 3d at 1072–79.

**2. The FAC adequately pleads third-party interception and Defendant's knowing participation under section 631(a).**

The FAC identifies Google Ads/DoubleClick, Adobe and Adobe Audience Manager, Qualtrics, SessionCam, Shape Security, Datadog, LivePerson, and Branch/App.link as tracker

operators whose tools collected, transmitted, and processed information from users accessing the Website. FAC ¶¶ 43–58. It alleges that Defendant incorporated those trackers into the Website, caused them to execute in users' browsers, and transmitted collected information to the third parties that developed and operated the trackers in real time. FAC ¶¶ 62–65. It further alleges that those third parties used correlated user data for their own commercial purposes, including advertising, marketing, and analytics. FAC ¶ 65.

That is exactly the type of covert third-party eavesdropping CIPA targets. See *Kearney*, 39 Cal. 4th at 125–29, 137; *Ribas*, 38 Cal. 3d at 359–62. A participant may listen to its own conversation; it may not secretly introduce an outside eavesdropper and then collapse that third party into itself. Recent website-tracking decisions have allowed section 631(a) claims to proceed on materially similar allegations that third-party vendors received website communications for their own advertising, analytics, profiling, or retargeting purposes. See *Doe v. Meta*, 690 F. Supp. 3d at 1076–79; *Ambriz*, 2025 WL 830450, at *2–3; *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 1085169, at *3–5 (N.D. Cal. Apr. 4, 2025).

The FAC also plausibly alleges the requisite intent. Section 631(a) expressly reaches one who "aids, agrees with, employs, or conspires with" another to intercept communications. Cal. Penal Code § 631(a). Defendant allegedly embedded 155 third-party trackers, including 47 cookies, 19 canvas fingerprints, and one session recorder; embedded Google Ads/DoubleClick and Adobe advertising infrastructure; used Qualtrics and Shape Security to generate persistent device-specific identifiers; and programmed trackers to fire before any meaningful consent opportunity. FAC ¶¶ 44, 51–58, 62–69. Those allegations support a reasonable inference that Defendant knowingly employed and aided outside vendors to intercept, disclose, and use visitors' communications. See *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438–39 (2002). At the pleading stage, that inference is enough. Defendant's motion improperly asks the Court to resolve intent and vendor status in its favor before discovery.

**C. The FAC Adequately Pleads a Section 638.51 Pen-Register Claim**

Section 638.50 defines a pen register or trap-and-trace device as a "device or process" that records or captures routing, addressing, or signaling information in an electronic communication. It does not exempt websites or internet communications. Courts addressing modern website tracking have recognized that software processes, pixels, scripts, cookies, SDKs, JavaScript code, and related browser-executed tools may qualify as a covered "device or process." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928–31 (N.D. Cal. 2024); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *3–5 (N.D. Cal. Dec. 12, 2024).

The FAC fits that text. It alleges that Defendant caused cookies, pixels, JavaScript tags, session-recording tools, canvas-fingerprinting scripts, and advertising-network requests to load and execute before consent; that those processes recorded IP addresses, device and browser information, persistent identifiers, unique fingerprints, cookies, and location or ZIP signals; and that they transmitted routing, addressing, and signaling information to third parties. FAC ¶¶ 43–58, 67–69, 77–86, 94, 99–103, 121–27. It also alleges there was no court order and no valid prior consent. FAC ¶¶ 66–70, 102–03, 125–26. At minimum, IP addresses are addressing information. *In re Zynga*, 750 F.3d at 1108.

*Nelson v. Reddit* is particularly instructive. There, the court held that website trackers recording addressing information transmitted through HTTP requests may qualify as pen registers and rejected the premise that website communications fall outside section 638.51 merely because users intentionally communicate with a website. *Nelson v. Reddit, Inc.*, No. 25-CV-1470 JLS (AHG), 2026 WL 445627, at *3–7 (S.D. Cal. Feb. 17, 2026). That is the same theory pleaded here. Other recent decisions have reached the same conclusion at the pleading stage. See *Harris v. iHeartMedia, Inc.*, No. 25-CV-6038-EKL, 2026 WL 247875, at *2–3 (N.D. Cal. Jan. 29, 2026); *Semien v. PubMatic Inc.*, No. 25-CV-3164-SI, 2026 WL 216333, at *10–11 (N.D. Cal. Jan. 27, 2026). Federal law is to similar effect: it expressly treats "dialing, routing, addressing, or signaling

information" in electronic communications as pen-register/trap-and-trace subject matter. See 18 U.S.C. § 3127(3)–(4).

Defendant's telephone only argument overreads the statute. Sections 638.52 and 638.53 describe authorization procedures; they do not narrow the operative definition in section 638.50. The Legislature chose the broader terms "device or process," "routing," "addressing," "signaling," and "electronic communication." Applying those words to browser-executed software processes is ordinary statutory interpretation, not a surprising expansion. See *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775–81 (2002); *Matera v. Google Inc.*, No. 15-cv-04062-LHK, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016).

Nor does the CCPA displace CIPA. The CCPA states that it is intended to "supplement existing laws" relating to consumers' personal information, and that "[w]herever possible, law relating to consumers' personal information should be construed to harmonize" with it, but that if there is a conflict, "the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." Cal. Civ. Code § 1798.175. The statutes can coexist. And Defendant cannot establish any section 638.51(b) exception on the pleadings where the FAC alleges pre-consent tracking for advertising, analytics, profiling, fingerprinting, and retargeting—not tracking limited to service operation, fraud prevention, or user consent. FAC ¶¶ 43–69, 83–88, 94–100.

**D. The FAC Adequately Pleads Direct Liability Under the Wiretap Act**

Defendant mischaracterizes the federal claim as a mere aiding-and-abetting theory. The FAC alleges direct statutory liability. It alleges that Defendant violated section 2511(1)(a) by causing trackers to operate through users' browsers and intercept communications without consent, section 2511(1)(c) by disclosing the resulting information to third parties without consent, and section 2511(1)(d) by using that information for advertising and marketing purposes without consent. FAC ¶¶ 135–37. Those are direct theories under the statute's own text. "Procures" is express primary liability, not judge-made secondary liability.

The FAC also plausibly alleges contents and in-transit acquisition. The Wiretap Act defines "contents" to include information concerning the "substance, purport, or meaning" of a

communication. 18 U.S.C. § 2510(8). And it prohibits intentional interception, procurement of interception, disclosure, and use of the contents of wire, oral, or electronic communications. 18 U.S.C. § 2511(1)(a), (c), (d). Plaintiff alleges browser-executed scripts, cookies, pixels, fingerprinting, session replay, and network requests that fired as she interacted with Defendant's Medicare pages and duplicated or transmitted information while the communications were occurring. FAC ¶¶ 43–69, 89–100. That is sufficient at the pleading stage. See *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Javier*, 2022 WL 1744107, at *1–2.

Plaintiff does not rely on a prohibited aiding-and-abetting theory under section 2520. She alleges that Defendant itself procured the interception and then disclosed and used the intercepted contents. Defendant's cases rejecting secondary liability therefore miss the claim actually pleaded.

Defendant also cannot establish a consent defense on the pleadings. The FAC alleges the trackers executed and recorded data before any cookie banner, consent pop-up, or comparable mechanism that would allow a meaningful prior choice. FAC ¶¶ 66–70, 102. On that pleading, Defendant cannot convert a passive footer link or generalized policy disclosure into a Rule 12 finding of valid consent for the specific, real-time interceptions alleged here. See *Berman*, 30 F.4th at 856–59; *Nguyen*, 763 F.3d at 1178–79; *Khoja*, 899 F.3d at 998–1003. Consent is therefore not resolvable on the pleadings.

In any event, if the Court reaches section 2511(2)(d), the FAC plausibly alleges interception for downstream disclosure, profiling, retargeting, and exploitation of Medicare-plan communications. FAC ¶¶ 71–72, 94–100. Under Sussman, the relevant inquiry is the intended use of the interception, not merely the interception itself. *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *Deteresa v. ABC*, 121 F.3d 460, 467 (9th Cir. 1997). Courts confronting tracker allegations have found similar pleadings sufficient. See *Doe v. Meta*, 690 F. Supp. 3d at 1077–79; *Smith*, 2025 WL 1085169, at *4–5; *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1052–53 (N.D. Cal. 2025). But that fallback need not be the Court's starting point, because the FAC already pleads direct statutory liability and pleads facts that preclude a pleadings-stage consent ruling.

**E. The FAC Adequately Pleads CDAFA Liability**

CDAFA prohibits knowingly accessing and without permission taking, copying, making use of, adding to, altering, or providing a means of access to data, computer software, or a computer system. Cal. Penal Code § 502(c)(1), (2), (4), (6), (7). "Access" includes causing input, causing output, causing data processing, or communicating with the resources of a computer, computer system, or network. Cal. Penal Code § 502(b)(1). "Data" includes information in transit and information presented on a display device. Cal. Penal Code § 502(b)(8).

The FAC alleges Plaintiff used a Samsung tablet running Google Chrome and that Defendant caused third-party code, cookies, pixels, session-recording tools, fingerprinting scripts, and related tracker processes to execute through her browser; caused data processing and output from her device; caused data to be copied and transmitted to third-party systems; added or altered data and software; and used collected information for advertising and marketing. FAC ¶¶ 43–69, 146–59. Those allegations state a CDAFA theory grounded in browser-side and device-side access, not mere server-side collection.

**1. The FAC plausibly alleges damage or loss.**

Defendant's loss argument overstates what must be pleaded at this stage. The FAC alleges unauthorized installation or storage of tracking technology, alteration of data and software, access to Plaintiff's browser or device, taking and use of data, and resulting damages. FAC ¶¶ 153–59. The alleged code did not merely observe conduct from afar; it allegedly executed through Plaintiff's browser, wrote and stored cookies and persistent identifiers, generated fingerprints, caused data processing and output, consumed device and network resources, and transmitted copied data outward. Those allegations plausibly describe browser-side and device-side effects, not purely abstract privacy interests. See *Brown v. Google LLC*, 685 F. Supp. 3d 909, 932–39 (N.D. Cal. 2023); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025).

That said, Plaintiff does not need to overstate this claim. If the Court concludes the FAC should plead CDAFA loss with greater specificity as to Plaintiff herself, dismissal with prejudice would still be improper. The present allegations are sufficient to keep the claim in the case at the

pleading stage; at minimum, any perceived shortfall would call for leave to amend, not termination with prejudice. See Cal. Penal Code § 502(e)(1), (b)(11).

**2. The FAC plausibly alleges access without permission.**

Defendant's "without permission" argument seeks to convert ordinary website visitation into blanket permission for hidden third-party code. CDAFA's text does not compel that result. Plaintiff does not allege she hacked Defendant's system. She alleges the opposite: Defendant caused third-party code to access, process, alter, record, and transmit data from her browser and device beyond the limited permission she gave by requesting Medicare plan and rate pages. FAC ¶¶ 62–70, 99–105, 153–56.

Consent to retrieve a webpage is not consent to pre-consent fingerprinting, session replay, persistent identifier creation, keyboard-input monitoring, and transmission of plan and rate signals to advertising vendors. FAC ¶¶ 45–49, 57–58, 66–70, 94–100. The FAC also plausibly alleges scienter. Defendant allegedly maintained a consent architecture while configuring the challenged trackers to fire before that mechanism could function. FAC ¶¶ 66–70, 102. That supports an inference that Defendant knew permission was required but absent. See *Hawkins*, 98 Cal. App. 4th at 1438–39.

## F. The FAC Adequately Pleads a California Constitutional Privacy Claim

A California constitutional privacy claim requires a legally protected privacy interest, a reasonable expectation of privacy, and a serious invasion sufficient to constitute an egregious breach of social norms. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–40 (1994); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 295 (2009). The FAC plausibly alleges all three elements. California law also recognizes that hidden recording or transmission of a person's communications or interactions, in circumstances giving rise to privacy expectations, can be highly offensive. See *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231–37 (1998).

First, Plaintiff alleges a protected informational privacy interest in data reasonably linked to her and revealing the details of her Medicare supplement shopping session, including ZIP-based location, Yuba County selection, page flow, clickstream, plan selection and rate review signals,

device and browser identifiers, persistent identifiers, session-recording data, fingerprinting data, and related tracker data. FAC ¶¶ 89–98, 164–69. Defendant's attempt to reduce that interest to an IP address or generic browsing ignores the pleaded context. California and Ninth Circuit authority recognize privacy interests in detailed online activity and identifiers that reveal personal preferences or sensitive subjects. See *In re Facebook*, 956 F.3d at 596–98, 603–07; *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946–47 (N.D. Cal. 2022); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799.

Second, Plaintiff plausibly alleges a reasonable expectation of privacy. She expected her communications would be exchanged with Defendant for the limited purpose of displaying coverage information and plan rates, not copied in real time to third-party advertising, analytics, fingerprinting, and session-replay vendors for their own commercial use and profiling functions. FAC ¶ 95. That expectation is reasonable on an insurer's Medicare site where the user is researching coverage and rates. A footer privacy link does not defeat that expectation as a matter of law, especially where the FAC alleges the trackers fired before any meaningful consent opportunity. FAC ¶¶ 66–70, 95. See *Shulman*, 18 Cal. 4th at 231–37.

Third, the FAC plausibly alleges a serious intrusion. Defendant allegedly deployed 155 third-party trackers, including 47 cookies, 19 canvas fingerprints, and one session recorder; SessionCam allegedly provided screen recording, keystroke capture, mouse tracking, scroll tracking, and likely form-input capture; testing allegedly confirmed pre-consent cookies, third-party tracker requests, canvas fingerprinting, a session-recording tool, and a keylogging instance; and no cookie banner or consent pop-up appeared before the trackers fired. FAC ¶¶ 44–49, 57–58, 67–69. The resulting disclosure allegedly fed profiling and targeted advertising tied to Plaintiff's Medicare inquiry. FAC ¶¶ 94–100. Covertly recording and sharing a detailed Medicare supplement shopping session with outside advertising and analytics vendors plausibly constitutes an egregious breach of social norms. See *In re Facebook*, 956 F.3d at 606–07; *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; *Shulman*, 18 Cal. 4th at 236–37; *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992–93 (2011).

Defendant's damages argument does not justify dismissal. Plaintiff seeks prospective equitable and injunctive relief on this claim to prevent future pre-consent interception and disclosure, and she alleges an intent to return when Medicare plans and prices change. FAC ¶ 98; Prayer ¶ 8. To the extent damages are later unavailable on this cause of action, that would affect the scope of remedies, not whether the claim has been plausibly pleaded. See *Moore v. Rodriguez*, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) (dismissing only where plaintiffs sought damages and not injunction).

**G. Dismissal with Prejudice Is Unwarranted; Plaintiff Should Be Granted Leave to Amend**

If the Court concludes any claim requires additional specificity, dismissal with prejudice would be improper. Rule 15(a)(2) provides that the Court should freely give leave when justice so requires. Any remaining deficiency here would concern pleading detail, not legal impossibility, and Plaintiff should be permitted to amend.

## V. CONCLUSION

The FAC plausibly alleges a concrete privacy injury, a substantive Medicare supplement and rate inquiry, pre-consent interception by outside vendors, actionable claims under CIPA sections 631(a) and 638.51, direct liability under the Wiretap Act, unauthorized browser-side and device-side access under CDAFA, and a serious invasion of privacy under California's Constitution. Defendant's motion asks the Court to disregard the FAC's context and resolve disputed technical, factual, consent, and remedy issues in Defendant's favor. Rule 12 does not permit that result.

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. In the alternative, if the Court finds any pleading deficiency, Plaintiff respectfully requests leave to amend.

Dated: July 6, 2026

**POTTER HANDY, LLP**

By: /s/ James M. Treglio

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff