**HOGAN LOVELLS CADWALADER US LLP**
Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hlc.com
jay.ettinger@hlc.com

Adam Cooke (admitted *pro hac vice*)
555 Thirteenth Street NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
adam.a.cooke@hlc.com

*Attorneys for Defendant*
*United Healthcare Services, Inc.*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNE MAGLIOCCA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC., and DOES 1-100, inclusive,<br><br>Defendant. | Case No. 2:25-cv-03388-WBS-SCR<br><br>The Honorable William B. Shubb<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: August 17, 2026<br>Time: 1:30 p.m. PT<br>Courtroom: Courtroom 5, 14th Floor |

## TABLE OF CONTENTS


Page

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. PLAINTIFF FAILS TO SHOW AN INJURY IN FACT TRACEABLE TO DEFENDANT UNDER ARTICLE III ..... 1

II. PLAINTIFF'S CIPA CLAIMS STILL FAIL AS A MATTER OF LAW ..... 4

A. Plaintiff Still Cannot Maintain a CIPA Claim Under Section 631(a). ..... 4

1. No Contents of Communications Were Allegedly Intercepted ..... 4

2. Plaintiff Still Fails to Allege That UHS Acted with the Requisite Intent ..... 7

B. E-Commerce Technologies Are Not Pen Registers Under Section 638.51. ..... 8

III. PLAINTIFF'S ECPA CLAIM FAILS AS A MATTER OF LAW ..... 11

IV. PLAINTIFF STILL CANNOT STATE A CLAIM UNDER CDAFA ..... 14

A. Plaintiff Still Fails To Allege Damage Or Loss Under CDAFA. ..... 14

B. Plaintiff Fails To Allege That UHS Accessed Her Computer "Without Permission." ..... 16

V. PLAINTIFF FAILS TO ALLEGE A PRIVACY CLAIM UNDER CALIFORNIA'S CONSTITUTION ..... 16

A. As Before, Plaintiff Has No Privacy Interest in Information That is Neither Sensitive Nor Confidential. ..... 17

B. Plaintiff's Conduct Defeats Any Purported Reasonable Expectation of Privacy. ..... 18

C. There Is No Highly Offensive Intrusion. ..... 19

VI. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ..... 20

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 15

*AtPac, Inc. v. Aptitude Sols., Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010) (Shubb, J.) .......... 15, 16

*Baton v. Ledger SAS*,
740 F. Supp. 3d 847 (N.D. Cal. 2024) .......... 4

*Bell v. City of Kellogg*,
922 F.2d 1418 (9th Cir. 1991) .......... 20

*Blalock v. EquipmentShare.com Inc.*,
2026 WL 330067 (Cal. Super. Jan. 27, 2026) .......... 9

*In re Blue Shield of California Privacy Litig.*,
No. 4:25-cv-03209-YGR (N.D. Cal. July 10, 2026), Dkt. 134 .......... 13

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 15

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) .......... 20

*Chang v. County of Siskiyou*,
2024 WL 4581687 (E.D. Cal. Oct. 25, 2024) .......... 14

*Comm'r v. Bosch's Est.*,
387 U.S. 456 (1967) .......... 9

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) .......... 18

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 19

*DirecTV, Inc. v. Treworgy*,
373 F.3d 1124 (11th Cir. 2004) .......... 13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... *passim*

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)........................................ 3, 18, 19

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. July 20, 2010)........................................ 16

*Fogelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011)........................................ 19

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026)........................................ 18

*Gill v. Hearst Pub. Co.*,
40 Cal. 2d 224 (1953)........................................ 18

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022)........................................ 18

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025)........................................ 2, 17

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026)........................................ 11

*Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*,
2023 WL 5806547 (E.D. Cal. Sept. 6, 2023)........................................ 7

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*,
958 F.2d 295 (9th Cir. 1992)........................................ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994)........................................ 17

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)........................................ 15

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024)........................................ 18

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012)........................................ 12

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025)........................................ 15

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016)........................................ 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................ 4

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .... 19

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) (Shubb, J.) .... 16

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .... *passim*

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) .... 15

*Nelson v. Reddit, Inc.*,
2026 WL 445627 (S.D. Cal. Feb. 17, 2026) .... 11

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) .... 13

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019), Opp. 5.... 3

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000).... 12

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023).... 13

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002).... 8

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022).... 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025).... 1, 2, 17, 18

*Ramos v. Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. July 29, 2025).... 5, 6

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024).... 8

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025).... 9, 10, 11

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
56 F.4th 1179 (9th Cir. 2022).... 20

*Scharon v. Paramount Glob.*,
2025 WL 2996812 (Cal. Super. Ct. Oct. 3, 2025) .... 9

*Schneider v. California Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998).......................................................................................7, 15

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ......................................................................11

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .............................................................................14

*Shulman v. Group W Productions, Inc.*,
18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998)................................19

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ..........................................................................6, 17, 18

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .........................................................................................2, 6

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)...........................................................................................................10

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999)...........................................................................................13

*Turrieta v. Lyft, Inc.*,
16 Cal. 5th 664 (2024) .........................................................................................................9

*Weekly. v. United States*,
2023 WL 6796428 (E.D. Cal. Oct. 13, 2023) ............................................1, 13, 14, 16

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ...................................................................19

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)...............................................................................14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014).........................................................................................4, 5

**Federal Statutes**

18 U.S.C. § 1030 (Computer Fraud and Abuse Act) .........................................................15

18 U.S.C. §§ 2510–2523 (Electronic Communications Privacy Act of 1986) ................. 12, 14, 20

18 U.S.C. § 2511(1)(a)......................................................................................................12

18 U.S.C. § 2520(a) ....................................................................................................12, 13

**California Statutes**

Cal. Civ. Code §§ 1798.100–1798.199 (California Consumer Privacy Act).................... 10, 11, 14

Cal. Civ. Code § 1798.100(a) ........................................................................................ 10

Cal. Civ. Code §§ 1798.120–121 .................................................................................... 10

Cal. Civ. Code § 1798.175 .............................................................................................. 10

Cal. Penal Code § 502 (Comprehensive Computer Data Access and Fraud Act) ................ *passim*

Cal. Penal Code § 502(e)(1)............................................................................................ 20

Cal. Penal Code §§ 630–638.53 (California Invasion of Privacy Act)................................ *passim*

Cal. Penal Code § 638.51 ................................................................................... 8, 9, 10, 11

Cal. Penal Code § 638.52 ............................................................................................ 9, 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 7

**Other Authorities**

AB 929 (Chau) Bill Analysis, Assembly Committee on Public Safety (Apr. 7, 2015)................. 9

*The State of Data Privacy Protection: Exploring the Cal. Consumer Privacy Act and Its European Counterpart before the S. Comm. on Judiciary* (Mar. 5, 2019) (statement of Alastair Mactaggart, Chairman, Californians for Consumer Privacy)................................... 10

## INTRODUCTION

The First Amended Complaint ("FAC") confirms what the Court already recognized: Plaintiff cannot manufacture a viable privacy claim by recasting ordinary e-commerce technologies that purportedly track non-sensitive website browsing as criminal wiretapping or hacking. ECF No. 23. Despite the benefit of the Court's prior order and the opportunity to amend, Plaintiff alleges no new facts that alter the Court's analysis or cure the deficiencies it previously identified. Instead, the FAC repackages the same theories the Court already rejected and attempts to extend statutes addressing fundamentally different circumstances to fit the allegations here. Because Plaintiff has now failed twice to plead any viable claims, further leave to amend would be futile. The FAC should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF FAILS TO SHOW AN INJURY IN FACT TRACEABLE TO DEFENDANT UNDER ARTICLE III

Just like the first complaint, the FAC alleges only the collection of "non-sensitive browsing activity on a single website," which this Court, and many others, "have repeatedly found insufficient to establish a concrete injury." Order on Motion to Dismiss, ECF No. 21 ("Order") 9. Plaintiff "does not allege that the trackers captured search queries, form inputs, health-related browsing on specific conditions or treatment pages, or any other information that could be characterized as 'embarrassing, invasive, or otherwise private.'" *Id.* at 10 (citing *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025)). Nothing in Plaintiff's Opposition changes this reality.

To start, Plaintiff does not dispute that the FAC fails to allege any personally identifying information was collected. *See* UHS's Motion to Dismiss the First Amended Complaint, ECF No. 28-1 ("Mot.") 8–11. She also does not dispute that her device IP address and other device metadata are neither personally identifying nor otherwise sensitive and, indeed, *must* be transmitted to enable a website to function. *Id.* 10–11. She further fails to respond to UHS's argument and cited authority finding that the collection of non-individually identifying information does not give rise to a concrete privacy injury. Mot. 9–10; *see also Weekly. v. United States*, 2023 WL 6796428, at *5 (E.D. Cal. Oct. 13, 2023) ("[A] plaintiff's failure to respond to a defendant's argument set forth in

a dispositive motion constitutes waiver of that argument.”).

Instead, Plaintiff’s argument for why she has standing under Article III rests entirely on the assertion that the collection of otherwise non-identifying and non-sensitive browsing data can constitute a concrete privacy interest simply because it occurred while she was shopping for health insurance. *See* Plaintiff’s Opposition to Motion to Dismiss, ECF No. 29 (“Opp.”) 4. But Plaintiff cites *no authority* to support the contention that “[h]ealth insurance shopping is sensitive even when it does not reveal a diagnosis.” *Id.* To the contrary, courts reject the argument that any health-adjacent browsing necessarily implicates a protectable privacy interest. For example, in *Smith v. Facebook, Inc.*, 745 F. App’x 8, 9 (9th Cir. 2018), the plaintiffs argued that their browsing data allegedly implicated protectable health information because it included URLs with information about their health conditions. The court rejected this argument, finding that “data show only that Plaintiffs searched and viewed *publicly available health information* that cannot, in and of itself, reveal details of an individual’s health status or medical history.” *Id.* at 9 (emphasis added); *see also Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025) (“[D]isclosure of browsing activity on a publicly available website that does not relate to ‘the past, present, or future physical or mental health or condition of an individual is not actionable.’”).

Here, Plaintiff alleges that she visited the Website to obtain information about Medicare plan availability for Yuba County. FAC ¶¶ 89–94. Significantly, she does not allege that she disclosed or the Website Technologies transmitted anything sensitive about her (such as an underlying physical or mental health condition) while she browsed the Website. As this Court made clear, this is not the “sort of intrusive, wide-ranging data collection that gives rise to a concrete privacy injury,” but is instead akin to “clerk’s observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales.” Order at 10 (quoting *Popa*, 153 F.4th at 791).

Plaintiff’s cited authority only underscores the inadequacies of her allegations. For example, in both *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778 (N.D. Cal. 2022), and *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), the plaintiffs alleged that the Meta Pixel improperly transmitted *sensitive and confidential health information* that they entered while

logged in to secure patient portals hosted by their healthcare providers. *Meta Pixel*, 647 F. Supp. 3d at 784–85; *Doe*, 690 F. Supp. 3d at 1073–74. That information allegedly included communications with healthcare providers concerning physicians, medical conditions, appointments, and searches related to those medical conditions. *Meta Pixel*, 647 F. Supp. 3d at 785; *Doe*, 690 F. Supp. 3d at 1073–74. *Javier v. Assurance IQ, LLC,* is likewise readily distinguishable because it involved the alleged disclosure of a user's medical history that the user voluntarily entered into a website-hosted health questionnaire. 2022 WL 1744107, at *1 (9th Cir. May 31, 2022). Here, by contrast, there are *no* allegations that any purportedly transmitted information (i) came from a patient portal (let alone that Plaintiff even logged onto a patient portal); (ii) included sensitive health information concerning physicians, medical conditions, or appointments; or (iii) consisted of any user-inputted search queries concerning medical conditions.

Plaintiff's reliance on *In re Facebook, Inc. Internet Tracking Litigation* ("*In re Facebook*"), 956 F.3d 589 (9th Cir. 2020) and *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), Opp. 5, also miss the mark. As this Court already recognized, *In re Facebook* involved allegations that went "far beyond observing activity on a single website." Order at 8. Rather, the plaintiffs in that case alleged that Facebook compiled what the Ninth Circuit described as "a cradle-to-the-grave profile" of users by aggregating sensitive, personally revealing information collected across the internet over a significant period of time. *Id*. *Patel*, in turn, involved the unauthorized collection, use, and storage of users' biometric identifiers without proper authorization. 932 F.3d at 1274. By comparison, Plaintiff in this case alleges only the collection of routine browsing data while shopping for insurance on a public-facing website, which "bear[s] no resemblance to the detailed, sensitive data at issue" in either case. *See* Order at 9.

Plaintiffs' allegations regarding the receipt of health-insurance advertisements fare no better for two reasons:

First, this allegation is not new. Plaintiff alleged in the first complaint that she received health-insurance ads, and this Court correctly recognized that such allegations do not change the fact that Plaintiff failed to state a privacy injury because no "embarrassing, invasive, or otherwise private" information was allegedly collected. *See* Order at 7–8. Plaintiff cites no authority

establishing that the receipt of an advertisement, standing alone, can constitute a concrete privacy injury where the underlying data collected is neither sensitive nor personally identifying.

Second, Plaintiff cannot establish that her alleged receipt of health insurance advertising is "fairly traceable" to UHS's conduct where she admits she already began receiving health insurance ads *prior to* ever visiting the Website. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In fact, the reason Plaintiff visited the UHS Website in the first place was because she "click[ed] [on] a Facebook advertisement inviting her to 'learn more' about Medicare-related coverage" offered by UHS. FAC ¶ 90. Because she was receiving advertisements for health insurance products *before* any of the alleged data practices occurred, she cannot plausibly connect continued receipt of such ads to her activity on the Website. *See Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 879 (N.D. Cal. 2024) ("The 'fairly traceable' requirement 'ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct.'").

This Court should again dismiss Plaintiff's claims for lack of Article III standing.

## II. PLAINTIFF'S CIPA CLAIMS STILL FAIL AS A MATTER OF LAW

Apart from failure to satisfy the requirements of Article III standing, Plaintiff also has not alleged facts to state any viable claims for relief.

### A. Plaintiff Still Cannot Maintain a CIPA Claim Under Section 631(a).

The Opposition does not change Plaintiff's failure to allege that UHS (i) intercepted the contents of any communications, or (ii) acted with the requisite intent.

#### *1. No Contents of Communications Were Allegedly Intercepted.*

Plaintiff argues that her generic browsing data on the Website's public marketplace —which consisted of mouse clicks and a single entry of a ZIP-code—revealed the "substance, purport, or meaning" of her alleged communications. *See* Opp. 6–7 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–09 (9th Cir. 2014)). But Plaintiff's argument fails at the outset: she concedes that such information is not "contents" under CIPA, Opp. 6, and her own cited authorities likewise confirm this reality.

The *Zynga* court drew a clear distinction between a communication's "contents" and "record information." 750 F.3d at 1106. "Contents" refers to the "intended message conveyed by

the communication," whereas "record information"' refers to the "characteristics of the message that [are] generated in the course of the communication." *Id.* For example, when a user *"communicate[s] with a website by entering [her] personal medical information* into a form provided by [the] website"—including her "medical conditions, medications, and reasons for visiting"—the *user generates "contents." Id.* at 1107 (emphasis added) (cleaned up). A referrer URL, by contrast—which "provides the address of the webpage from which the request was sent"—is "record information" because the *browser generates it* automatically. *Id.* at 1102, 1107–08. Thus, *Zynga* explains that *user-generated contents* necessarily reveal the "substance, purport, or meaning" of the speaker's communications with the website; a third-party recipient receives the intended message itself. *Id.* at 1106. But mere "record information"—such as the "identification and address information" on the outside of an envelope—does not. *See id.* at 1107.

Plaintiff nevertheless asserts that information such as page titles, URL paths, event names, clickstream events, and related signals constitute "content" information because they allegedly revealed her "private health-insurance interests and financial-coverage preferences" to the Technology Vendors. FAC ¶¶ 89–94; Opp. at 6–7. This recycles the same "contents" argument *Zynga* expressly rejected. *Zynga*, 750 F.3d at 1108–09 (rejecting plaintiffs' argument that URLs identifying the webpages users viewed revealed their private interests because the URLs disclosed no user-generated "contents" and were instead quintessential record information); *see also Ramos v. Gap, Inc.*, 2025 WL 2144837, at *5 (N.D. Cal. July 29, 2025) (rejecting plaintiff's theory that clicking on a link to navigate to defendant's website revealed that "the user [was] interested in the information linked in the URL," and thus constituted a substantive user-generated communication).

Plaintiff does not allege the disclosure of a URL containing a *user-generated* search term—the circumstance *Zynga* recognized "could" in certain circumstances "amount to disclosure of the contents of a communication." 750 F.3d at 1108–09. Instead, Plaintiff simply clicked through the Website.[1] *See* Opp. at 7 ("Plaintiff's act[s]" consisted only "of requesting and exploring [the Website's] pages."). "[S]uch clicks are not protected content." *Ramos*, 2025 WL 2144837, at *5;

[1] The only text Plaintiff entered on the website was a ZIP code used to filter publicly available results, *which she concedes is not content*—Opp. 6.

*see also* Mot. 11–13.

Many courts have reinforced *Zynga*'s commonsense principle that simply navigating to or through a public website is *not a user-generated communication containing substantive content* under CIPA. In *Ramos*, for example, the court confronted similar allegations as here and explained: "At bottom, Plaintiff offers nothing more than his unsupported assertion that *clicking* on the URLs in the marketing emails here—which direct the user to Defendant's website—constitutes a communication from Plaintiff to Defendant. This is not enough." 2025 WL 2144837 at *5 (emphasis added). The court in *De Ayora* likewise dismissed a Section 631(a) claim because plaintiff did not allege "engaging in any communications with the websites or *otherwise generating any content*." 2026 WL 1653483, at *6 (N.D. Cal. June 8, 2026) (emphasis added).

The other cases Plaintiff cites do not support a different result. *See* Opp. 7 (citing *Meta Pixel*, 647 F. Supp. 3d at 795–96 and *Doe,* 690 F. Supp. 3d at 1072–77). Those cases involved actual user-generated communications—not routine website navigation—where patients logged into secure patient portals and entered sensitive health information that the Meta Pixel allegedly captured through URLs containing search queries about medical conditions. *See Meta Pixel* 647 F. Supp. 3d at 796–97 (search query for "ulcerative colitis" appeared in transmitted URLs); *Doe*, 690 F. Supp. 3d at 1076–77 (similar). *Meta Pixel* and *Doe* thus stand for the narrow proposition that user-generated content conveying sensitive health information to a medical provider may fall under Section 631(a). *Meta Pixel*, 647 F. Supp. 3d at 795; *Doe*, 690 F. Supp. 3d at 1076.

These decisions have no application here. Plaintiff does not allege that *she* generated any substantive content. She did not input confidential medical information into a website-hosted questionnaire, correspond with doctors, or search for a sensitive medical condition. To the extent Plaintiff points to any "descriptive URLs," *see* Opp. 7, nothing they contain "relates specifically to Plaintiff['s] health." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Rather, the URLs at issue "contain general health information that is accessible to the public at large." *Id*. at 955. The same pages are available to every computer, tablet, smartphone, or automated crawler that sends GET requests to these URLs. Nothing about the URLs, or the content of the pages located at those URLs, relates "to the past, present, or future

physical or mental health or condition of an individual." *Id.*; *cf. Meta Pixel*, 647 F. Supp. 3d at 793, 795–97; *Doe*, 690 F. Supp. 3d at 1076–77; *Javier*, 2022 WL 1744107, at *1.

More to the point, the FAC does not identify any actual descriptive URL—much less allege what "contents" it allegedly contained; rather, the FAC alleges only vague categories of data, including "full or partial page URLs," "page titles," "event names," and "clickstream events." FAC ¶ 94. It does not identify any specific URL path, query string, or user-generated search term transmitted during Plaintiff's session. And any "'new allegations contained in [Plaintiff's] opposition," *see, e.g.*, Opp. 7, "are irrelevant for Rule 12(b)(6) purposes," *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), because "a court *may not* look beyond the complaint" in "determining the propriety of a Rule 12(b)(6) dismissal." *Id.*; *see also Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, 2023 WL 5806547, at *1 (E.D. Cal. Sept. 6, 2023) ("[U]nder Rule 12(b)(6), 'review is limited to the complaint alone.'" (citation omitted)).

Plaintiff has now had two opportunities to show that her generic browsing data on the Website's public marketplace amounted to the contents of a communication, and has failed both times. Plaintiff's Section 631(a) claim should be dismissed with prejudice for this reason alone.

***2. Plaintiff Still Fails to Allege That UHS Acted with the Requisite Intent.***

Not only does Plaintiff fail to show that any of her substantive communications were intercepted, but she also fails to show that UHS acted with the specific intent to aid and abet such an alleged interception. Mot. 13–15.

Rather than respond to UHS's arguments, Plaintiff instead contends that UHS's use of E-Commerce Technologies "is exactly the type of covert third-party eavesdropping CIPA targets." Opp. 8. But UHS's use of commonplace e-commerce technologies on a public website is nothing like the intentional recording or third-party eavesdropping of private telephone conversations addressed in Plaintiff's cases. In *Kearney v. Salomon Smith Barney, Inc.*, for example, employees repeatedly recorded clients' telephone conversations without their knowledge. 39 Cal. 4th 95, 101–03 (2006). And in *Ribas v. Clark*, a participant arranged for a third party to listen to a private telephone conversation on an extension. 38 Cal. 3d 355, 358–59 (1985). Neither of these cases are analogous.

Plaintiff simply does not allege anything plausibly demonstrating the UHS acted with the specific intent Section 631(a) requires for "aiding and abetting" liability to attach. Mot. 13–15. Rather, she infers the requisite intent based on the mere fact that UHS allegedly uses E-Commerce Technologies. Opp. 8. But that alone is insufficient, and courts have dismissed Section 631(a) on this very basis. *See, e.g.*, *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123–24 (S.D. Cal. 2024) (dismissing Section 631(a) claim where plaintiff argued that "the Court can infer Defendant's knowledge"); *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241 at *6 (S.D. Cal. Feb. 12, 2024) (same). Plaintiff contends her inference is "reasonable" based on *People v. Hawkins*, 98 Cal. App. 4th 1428, 1442 (2002). Opp. 8. But *Hawkins* analyzes the CDAFA's *mens rea* required in a criminal hacking case; it says nothing about whether the use of commonplace e-commerce technologies satisfies Section 631(a)'s aiding or abetting intent standard. *Id.* at 1438–39.

The other cases Plaintiff cites are likewise distinguishable from the allegations here. *Ambriz v. Google, LLC* involved technology that transcribed and analyzed customer-service telephone calls in real time. 2025 WL 830450, at *1 (N.D. Cal. Feb. 10, 2025). And in *Smith v. Rack Room Shoes, Inc.*, the plaintiffs alleged that the defendant *knowingly* embedded third-party code designed to collect personally identifiable user-generated information. 2025 WL 1085169, at *4–5 (N.D. Cal. Apr. 4, 2025). By contrast, Plaintiff alleges no facts showing that the E-Commerce Technologies capture the contents of communication, *see supra* pp. 4–7, or UHS knowingly deployed them for that purpose. Her allegations therefore do not support the inference that UHS knew of—let alone intended to aid—any unlawful interception. *See Rodriguez*, 722 F. Supp. 3d at 1124; *Esparza*, 2024 WL 559241 at *6.

Plaintiff's Section 631(a) should be dismissed without leave to amend.

**B. E-Commerce Technologies Are Not Pen Registers Under Section 638.51.**

Plaintiff urges this Court to ignore Section 638.51's structure and legislative history, as well as California's broader privacy legislation context, and adopt a reading of the statute that would result in absurd consequences. This Court should instead follow the numerous California state courts analyzing California law, *see* Mot. 15–18, which conclude that Section 638.51 was never intended to criminalize commonplace e-commerce technologies. *See Comm'r v. Bosch's Est.*,

387 U.S. 456, 465 (1967) (when applying state law where the State's highest court has not addressed the question, federal courts should give "'proper regard' to [the] relevant rulings of other courts of the State.").

Plaintiff focuses on the statute's definition of a pen register, which she argues does not literally limit its application to telephonic communications. *See* Opp. 9–10. But that reductive analysis ignores the Court's "fundamental task" with "any question of statutory interpretation"—"to determine the Legislature's intent so as to effectuate the law's purpose." *Turrieta v. Lyft, Inc.*, 16 Cal. 5th 664, 687 (2024) (cleaned up). For instance, Plaintiff offers no explanation why Section 638.52, which governs the process for obtaining a court order authorizing the use of a pen register, requires the authorizing judge to identify "'the person to whom is leased or in whose name is listed on the *telephone line* to which the pen register or trap and trace device is to be attached' and the number and (if known) *physical location of the telephone line*." Mot. 16 (citing *Scharon v. Paramount Glob.*, 2025 WL 2996812, at *1 (Cal. Super. Ct. Oct. 3, 2025) (emphasis added)). If the Legislature intended the definition of a pen register to encompass ordinary e-commerce technologies, there would be no reason to require such an order authorizing the use of pen registers to identify the subscriber, telephone number, and physical location of a telephone line.

Likewise, Plaintiff does not—and cannot—dispute that the legislative history of Section 638.51 "indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software." *Rodriguez v. Ink Am. Int'l Grp. LLC*, 2025 WL 4034985, at *3, *16–17 (Cal. Super. Ct. Dec. 10, 2025). Indeed, the bill analysis concerning Section 638.51's enactment referred a total of 37 times to telephones without including a single mention of websites or the internet.[2] The "legislative history reveals the purpose of the bill," which for Section 638.51 was "to prevent the use of pen registers and trap and trace devices *on telephones*." *Blalock v. EquipmentShare.com Inc.*, 2026 WL 330067, at *1–2 (Cal. Super. Jan. 27, 2026).

---

[2] AB 929 (Chau) Bill Analysis, Assembly Committee on Public Safety (Apr. 7, 2015), http://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150615_111837_sen_comm.html (last visited July 27, 2026).

Plaintiff also fails to explain the misalignment of the California Consumer Privacy Act ("CCPA")—which regulates the collection and sharing of consumer data—with her interpretation of CIPA Section 638.51. UHS agrees that CIPA can and "should be construed to harmonize" with the CCPA as they are complementary laws covering distinct privacy arenas. Cal. Civ. Code § 1798.175; Opp. 10. Whereas the CCPA was enacted as a comprehensive and balanced regulatory framework for e-commerce technologies, *see* Mot. 17–18, CIPA Section 638.51 was enacted to equip law enforcement with the ability to monitor incoming and outgoing telephonic metadata and makes no mention of e-commerce technologies, *see id.* 16–17. Harmonization is therefore straightforward: the CCPA—not CIPA—covers use of the technologies Plaintiff allege were deployed on UHS's Website.

"Notably, the CCPA expressly contemplates businesses will collect and use personal data so long as a regulatory framework is followed." *Ink Am.*, 2025 WL 4034985, at *4. Under Plaintiff's theory, CIPA Section 638.51 is violated by the use of any e-commerce technologies unless the website obtains a visitor's prior opt-in consent. *See* FAC ¶¶ 123–25. But "[t]he CCPA *does not* require that users provide express consent prior to the collection of data." *Ink Am.*, 2025 WL 4034985, at *4 (emphasis added). Rather, as it relates to consumer choices regarding the processing of personal information, the CCPA simply requires that businesses provide disclosures, Cal. Civ. Code § 1798.100(a), and an option to opt-out for certain uses of personal information. *See* Cal. Civ. Code §§ 1798.120-121. As members of the California Privacy Protection Agency made clear, an opt-in consent regime was not appropriate because it is (i) both burdensome and moot for consumers—including because a consumer who seeks a service from a business necessarily must provide that business with information, and (ii) potentially violative of a company's First Amendment rights.[3]

Under Plaintiff's proposed interpretation of Section 638.51, one must believe that the

---

[3] *See The State of Data Privacy Protection: Exploring the Cal. Consumer Privacy Act and Its European Counterpart before the S. Comm. on Judiciary* (Mar. 5, 2019) (statement of Alastair Mactaggart, Chairman, Californians for Consumer Privacy), available at https://www.senate.ca.gov/media/senate-judiciary-committee-20190305?format=video (citing to *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) as a reason not to require opt-in consent).

Legislature carefully constructed the CCPA's *opt-out* consumer privacy framework concerning use of e-commerce technologies that collect personal information knowing that—approximately three years prior—it also enacted CIPA Section 638.51 to impose criminal liability on businesses that failed to obtain *opt-in* consent for use of the same technologies. Such an absurd result should be rejected. It also contravenes the principle that "to the extent that statutes can be harmonized, they should be, but in case of an irreconcilable inconsistency between them the later and more specific statute usually controls the earlier and more general one." *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) (citation omitted). The legislature "must be presumed to have known of its former legislation . . . and to have passed . . . new laws in view of the provisions of the legislation already enacted." *Id.* Plaintiff's expansive reading of CIPA, criminalizing web based analytical tools, would seemingly render the CCPA "void," leaving businesses who aligned their privacy practices to comply with the CCPA potentially exposed to criminal liability under Section 638.51. *Ink Am.*, 2025 WL 4034985, at *4.

The decisions Plaintiff cites suffer from the same reductive interpretation of the "pen register" definition without meaningfully engaging in the surrounding statutory context or the legislative history. *See* Opp. 9. For example, in *Nelson v. Reddit, Inc.*, 2026 WL 445627, at *3–7 (S.D. Cal. Feb. 17, 2026), the court does not analyze how Section 638.51 can be interpreted consistently with Section 638.52's requirements, any of the relevant legislative history, or how CIPA can be harmonized with CCPA's express regulation of e-commerce technologies. It simply cites back to prior federal court decisions, which similarly failed to engage in the required statutory analysis. *Id.* The same is also true for *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *2–3 (N.D. Cal. Jan. 29, 2026) and *Semien v. PubMatic Inc.*, 2026 WL 216333, at *11 (N.D. Cal. Jan. 27, 2026).

This Court should interpret Section 638.51 consistent with the Legislature's intent and in harmony with the CCPA so that it does not criminalize commonplace e-commerce technologies. *See* Mot. 15–18.

## III. PLAINTIFF'S ECPA CLAIM FAILS AS A MATTER OF LAW

Nothing in Plaintiff's Opposition fixes the multiple defects that doom her ECPA claim.

No Contents of Communications. As described above, *supra* pp. 4–7, Plaintiff's generic browsing data does not reveal the "substance, purport, or meaning" of any user-generated communication. Plaintiff's ECPA fails on this basis as well. *See* Mot. 18–19.

No Procurement-Based Private Right of Action. Tacitly acknowledging that aiding-and-abetting liability is not covered by the ECPA, Plaintiff argues that her ECPA claim should nevertheless survive because she alleges "that Defendant itself procured the interception," which she contends is a form of primary liability. Opp. 10–11. This theory also fails because the ECPA's "procurement" provision pertains only to criminal liability, *not* civil liability. *Compare* 18 U.S.C. § 2520(a) ("[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity . . . which engaged in that violation."), *with id.* § 2511(1)(a) ("[A]ny person who . . . intentionally intercepts, endeavors to intercept, or *procures* any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished.") (emphasis added). Section 2520 only permits private civil actions against individuals who engage in prohibited interceptions, disclosures, or uses; it does *not* permit civil claims against those who engage in alleged "procure[ment]." *Id.* § 2520.

Indeed, each Circuit Court that has analyzed § 2520 text and legislative history has reached the same conclusion: the ECPA's private right of action bars procurement-based claims. *See Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000) (analyzing § 2520's text and legislative history); *Luis v. Zang*, 833 F.3d 619, 634–38 (6th Cir. 2016) (same, citing *Peavy*); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (same, citing *Peavy*). In 1986, the Wiretap Act was amended to remove language from the private right of action that had permitted claims against a person who "*procures any other person to intercept, disclose, or use such communications*." *Peavy*, 221 F.3d at 168. "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Id*. at 169 (citation omitted). As amended, § 2520 narrows civil claims to those against persons who engaged in "that violation"—i.e., who intercepted, disclosed or intentionally used communications in violation of the law. *Id*. at 169. "The phrase 'which engaged *in that violation*' makes apparent the intent of

Congress to limit liability to a certain class of defendants." *DirecTV, Inc. v. Treworgy*, 373 F.3d 1124, 1126–27 (11th Cir. 2004). As a result, "the majority of courts [] have found that defendants cannot be liable under Section 2520 for 'procuring' an interception." *In re Blue Shield of California Privacy Litig.*, No. 4:25-cv-03209-YGR (N.D. Cal. July 10, 2026), Dkt. 134 at *11; *see also Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4 & n.4–5 (W.D. Wash. Mar. 4, 2026) (A "majority" of courts to consider this issue "reject[] the notion that a defendant may be held liable for 'aiding and abetting' or 'procuring' an interception.").

<u>The Crime-Tort Exception to Party Consent is Inapplicable</u>. Plaintiff's half-hearted, single paragraph response (Opp. 11) fails to show (i) any underlying crime or tort, (ii) that any criminal or tortious act was separate and independent from the alleged interception, or (iii) UHS acted with a criminal or tortious purpose. Mot. 20–21.

Plaintiff argues the FAC "plausibly alleges interception for downstream disclosure, profiling, retargeting, and exploitation" of Plaintiff's browsing data, but she fails to identify what crime or tort is purportedly accomplished through this conduct. Opp. 11. As explained *supra* pp. 4–11 and *infra* pp. 14–20, Plaintiff cannot establish that the alleged conduct violates CIPA, CDAFA, or the right to privacy under the California Constitution. *Contra* FAC ¶ 83. Moreover, because each of these alleged crimes/torts are premised on the same alleged interception, without any further conduct required, Plaintiff cannot show that the purported crime or tort is "separate and independent from the act of the recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135–36 (9th Cir. 2022); *see also Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023) (crime-tort exception is not triggered when "the tortious conduct is the alleged wiretapping itself."). Plaintiff fails to address the "separate and independent" requirement in her Opposition and thus waives any response. *See Weekly.*, 2023 WL 6796428, at *5.

Plaintiff also cannot show that UHS implemented the E-Commerce Technologies with the intent to commit a crime or tort. Mot. 20–21. The relevant question is whether the "purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Plaintiff alleges that UHS used the E-Commerce Technologies for "marketing and analytics purpose," FAC ¶ 83, but fails to address the decisions

UHS cites holding that the crime-tort exception is inapplicable "where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously." Mot. 21 (quoting *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 895 (S.D. Cal. 2025) (collecting cases). Using ubiquitous technologies on a public website for analytics and marketing purposes is not itself unlawful; to the contrary, the CCPA expressly contemplates and permits the use of such technologies. *See supra* pp. 10–11. Neither of Plaintiff's cited authority address the question of whether the use of e-commerce technologies for marketing and advertising constitutes a criminal or tortious purpose. Opp. 11 (citing *Doe*, 690 F. Supp. at 1077–79; *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025)).

Because Plaintiff cannot establish the crime-tort exception is applicable, UHS's consent to the E-Commerce Technologies defeats her ECPA claim.

## IV. PLAINTIFF STILL CANNOT STATE A CLAIM UNDER CDAFA

### A. Plaintiff Still Fails To Allege Damage Or Loss Under CDAFA.

In her Opposition, Plaintiff abandons every theory of "damage or loss" the FAC actually pleads, including any "damage or loss" from an alleged invasion of privacy, loss of information, loss of money, and incurred costs, FAC ¶¶ 138, 140; UHS's purported unjust enrichment, *id.* ¶ 158; and the bare conclusion that Plaintiff "suffered damages," *id.* ¶ 159.

UHS's Motion demonstrated why each theory fails. Mot. 22–24. Yet the Opposition defends none of them: it identifies no money Plaintiff lost or costs she incurred; it does not contend that loss of information or privacy constitutes cognizable CDAFA harm; and it says nothing about unjust enrichment or UHS's authorities addressing that theory. *See* Opp. 12–13. "In this District, as well as in other courts in this circuit, a plaintiff's failure to respond to a defendant's argument set forth in a dispositive motion constitutes waiver of that argument." *See Weekly.*, 2023 WL 6796428, at *5 & n.6 (collecting cases); *Chang v. County of Siskiyou*, 2024 WL 4581687, at *11 (E.D. Cal. Oct. 25, 2024) (explaining that failure to respond to an argument may "even be construed as a silent concession that the opposing party is correct.").

Indeed, Plaintiff alleges no actual financial or economic harm. The FAC says only that Plaintiff "suffered damages." FAC ¶ 159. "This conclusory allegation is utterly devoid of factual

support in the complaint and is thus insufficient to establish standing." Order at 4, n.1. She does not allege that she sold, tried to sell, or otherwise profited from her data; nor does she allege that anyone offered to buy it. And unlike the plaintiffs in *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) she alleges no facts showing that her browsing history carried financial value. *Cf. Brown*, 685 F. Supp. 3d at 940 (alleging that Google paid "users $3.00 a day for their browsing history."). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (dismissing a speculative economic-loss theory under CDAFA).

Plaintiff instead pivots to a new theory: that the challenged code "consumed device and network resources," and purports to cite certain paragraphs of the FAC as support. Opp. 12. But nowhere in the FAC does Plaintiff allege any resource consumption or any resulting impairment. Plaintiff's attempt to augment her allegations through her Opposition is improper and should be rejected. *See Schneider*, 151 F.3d at 1197 n.1.

Regardless, alleging that the E-Commerce Technologies merely *interacted* with Plaintiff's device is not enough to establish "damage or loss." *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1067 (N.D. Cal. 2012) (the "consumption of a device's limited resources" does not constitute "damage" under the Computer Fraud and Abuse Act ("CFAA"); rather, Plaintiff must show that Defendant intended so serious an impairment "as to result in a slowdown, if not an outright 'shutdown.'" *Id.*; *AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1183–85 (E.D. Cal. 2010) (Shubb, J.) (Under the CFAA, "loss" was intended to cover "the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks"); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) (explaining that the "necessary elements" of CDAFA "do not differ materially from the necessary elements of the CFAA"). As before, Plaintiff's FAC alleges neither that the E-Commerce Technologies' code seriously impaired her device nor that UHS implemented it with the intent to do so.

Because Plaintiff again fails to establish any "damage or loss," the Court should dismiss Plaintiff's CDAFA claim with prejudice.

### B. Plaintiff Fails To Allege That UHS Accessed Her Computer "Without Permission."

Plaintiff still does not allege that UHS accessed any system "to which access was restricted through technological means." *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *6, *11 (N.D. Cal. July 20, 2010); *see* Mot. 24–26. At most, the FAC alleges that Plaintiff voluntarily visited the Website, causing her browser to request and receive the Website's pages and code. FAC ¶¶ 23–28, 89. Her Opposition makes no attempt to cure that deficiency or identify any password, code-based barrier, blocker, or other technological restriction that UHS or the Technology Vendors overcame. *See* Opp. 13. Again, the Court may construe Plaintiff's silence on this issue as a concession that UHS is correct. *See Weekly*, 2023 WL 6796428, at *5 & n.6.

Plaintiff argues instead that her "[c]onsent to retrieve a webpage" gave UHS only "limited permission" to deliver the requested content, not to execute the Website's third-party code. Opp. 13. But CDAFA does not equate "without permission" with the absence of affirmative opt-in consent, and Plaintiff cites no authority supporting her interpretation. Rather, consistent with CDAFA's focus on hacking, a defendant gains access to a computer, computer network, or website "without permission" when that access is gained to a system that is "restricted through technological means." *Facebook, Inc.*, 2010 WL 3291750, at *6, *11; *see* Mot. 24–25. As stated above, Plaintiff alleges no technological restriction that UHS circumvented; to the contrary, she admits that she visited the Website on her own volition, causing her browser to request and receive the Website's code. *See* FAC ¶¶ 23–28, 89. As this Court explained in *AtPac*, "a person cannot access a computer 'without authorization' if the gatekeeper has given them permission to use it." 730 F. Supp. 2d at 1180.

Plaintiff fails again to state the core elements of a CDAFA claim. It should be dismissed with prejudice.

## V. PLAINTIFF FAILS TO ALLEGE A PRIVACY CLAIM UNDER CALIFORNIA'S CONSTITUTION

Nothing in Plaintiff's Opposition changes the fact that she cannot (i) identify a legally cognizable privacy interest; (ii) establish a reasonable expectation of privacy under the circumstances; or (iii) show a "highly offensive" intrusion. *Mastel v. Miniclip SA*, 549 F. Supp. 3d

1129, 1137 (E.D. Cal. 2021) (Shubb, J.). Her privacy claim under California's Constitution should therefore be dismissed with prejudice.

### A. As Before, Plaintiff Has No Privacy Interest in Information That is Neither Sensitive Nor Confidential.

Plaintiff's Opposition claims that she has a cognizable privacy interest in the data revealing the details of what she describes as an "ordinary website visitation." Opp. 13. Despite that characterization, Plaintiff then argues that because "the details of her Medicare supplement shopping session, including ZIP-based location, Yuba County selection, page flow, clickstream, plan selection and rate review signals," among other things, reveal "personal preferences or sensitive subjects," she has identified a sufficiently cognizable privacy interest on which to stake a claim under the California Constitution.

That is wrong. The California Constitution's right to "informational privacy" protects only the "dissemination or misuse of *sensitive* and *confidential* information." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 (1994) (emphasis added). Indeed, "the right to privacy is not absolute." *Id.* at 34. "[T]here exist[s] no free-roaming privacy right" to data generated while clicking through a website's public marketplace in a single session—especially when that data *is neither sensitive nor confidential*. *Cf. Popa*, 153 F.4th at 791 (Plaintiff "identifies no embarrassing, invasive, or otherwise private information collected by" Defendant); *see also* Order at 9. Constitutionally cognizable privacy interests simply "do not encompass all conceivable assertions of individual rights." *Hill*, 7 Cal. 4th at 35.

Plaintiff's entire theory of informational sensitivity is therefore predicated on the fragile idea that because the Website sells health insurance, any data she generated while browsing is therefore "health-related" and entitled to heightened protection. *See generally* Opp. 13–14. But, as described above *supra* pp. 2–3, courts have rejected that approach outright where there is no information revealing the visitor's medical condition. *See Smith*, 262 F. Supp. 3d at 955; *Harrill*, 2025 WL 1635428, at *4. Plaintiff did not—and cannot—allege that UHS took her sensitive or confidential health data from a secured patient portal as in *Meta Pixel*. The information at issue is precisely the kind of "general health information that is accessible to the public at large" that *Smith*

held insufficient to establish a privacy interest. 262 F. Supp. 3d at 955.

Plaintiff's remaining case law provides no relief. The holdings in both *In re Facebook*, 956 F.3d 589 and *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) rest on two critical facts absent here: (i) an affirmative misrepresentation, *In re Facebook*, 956 F.3d at 602 ("Facebook set an expectation that logged-out user data would not be collected, but then collected it anyway."), *Google RTB*, 606 F. Supp. 3d at 946 ("[Google] represented to the plaintiffs that their information would not be [sold] but then proceeded to [sale] it anyways"), and (ii) the "enormous amount of individualized data" collected, *In re Facebook*, 956 F.3d at 603 ("That this amount of information can be easily collected without user knowledge is similarly significant."), *Google RTB*, 606 F. Supp. 3d at 946 ("The nature and volume of the collected information is also important."). As Plaintiff alleges neither, the reasoning of those cases does not apply here.

**B. Plaintiff's Conduct Defeats Any Purported Reasonable Expectation of Privacy.**

Plaintiff makes no attempt to deny that she conducted herself in a manner inconsistent with an "actual expectation of privacy." Mot. 27–28. Nor could she: Plaintiff voluntarily entered a "public marketplace" and *chose* to browse its wares. *Gill v. Hearst Pub. Co.*, 40 Cal. 2d 224, 230 (1953) ("By [her] own voluntary action plaintiff[] waived [her] right of privacy"). Plaintiff has no greater "expectation of solitude while browsing an online shopping platform" than she would "within the four walls of a real-world store." *See Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026).

There is no reason to deviate from that commonsense analogy where—as this Court found—Plaintiff's generic browsing activity produced only "non-sensitive" and "rudimentary" data. Order at 8–10; *see also Popa*, 153 F.4th at 791; *accord Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025) (plaintiff's product preference information generated on website "no different" from what employees "would have been able to observe" in "a brick-and-mortar store"), *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) (websites capture "how customers react to a display of products" just as "a security camera at a physical store might").

Contrary to what Plaintiff suggests, *see* Opp. 14, visiting a website that sells health-related products does not, by itself, mean that she had a reasonable expectation of privacy in her resulting browsing data.[4] *See Wright v. TrueCare Prop. Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) (dismissing intrusion-of-privacy claim where plaintiff alleged only that she used defendant's website without identifying any healthcare information disclosed); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (similar); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (similar). The proper question is "*whether the data itself is sensitive*." *In re Facebook*, 956 F.3d at 603 (emphasis added). And here, the answer is: no.

**C. There Is No Highly Offensive Intrusion.**

Without meaningfully engaging with the arguments UHS raised in its Motion, Mot. 28–29, Plaintiff simply states that UHS's conduct was "highly offensive" because it used various E-Commerce Technologies on its Website provided by the Technology Vendors. Again, Plaintiff's cited authority does not support that proposition. The *In re Facebook* court found the defendant's data collection practices "highly offensive" because plaintiffs alleged "surreptitious data collection when individuals were not using" defendant's website; the court even noted how "the company's own officials recognized these practices as a problematic privacy issue." 956 F.3d at 606. Plaintiff alleges nothing to that effect. And, as explained above, *supra* pp. 2–3, the *Meta Pixel* court confronted allegations that defendant collected plaintiffs' confidential health information while logged into a patient portal and found defendant's data collection "highly offensive" on that basis. 647 F. Supp. 3d at 800. Those facts are not present here. Perhaps most telling is Plaintiff's citation to *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011), *as modified* (June 7, 2011), where the court found that "the conduct of which [Plaintiff] complains does not meet the standard of 'highly offensive.'" So too here. Plaintiff's privacy claim under the California Constitution should be dismissed with prejudice.

---

[4] Plaintiff's citation to *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200 (1998), *as modified on denial of reh'g* (July 29, 1998), is a mystery. That case addressed whether television producers could secretly film and broadcast the medical rescue of accident victims trapped in an overturned vehicle, including their treatment and private conversations with emergency personnel. *Id.* at 209. It has nothing to do with a consumer voluntarily browsing publicly available products on a commercial website.

## VI. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff has now twice failed to allege facts to support Article III standing or state her claims. Plaintiff also has not identified any further allegations that could be added to remedy these foundational flaws. Where, as here, "amendment would be futile" the Court may dismiss without leave amend. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

Further, courts may "dismiss an action rather than remand it" where "there is an 'absolute certainty' that the state court would dismiss the action following remand." *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189 (9th Cir. 2022); *see also Bell v. City of Kellogg*, 922 F.2d 1418, 1424 (9th Cir. 1991) ("Where the remand to state court would be futile . . . the desire to have state courts resolve state law issues is lacking."). That is the case here.

Each of Plaintiff's claims require her to establish that she was injured by UHS's alleged conduct. *See* CIPA § 637.2(a) (plaintiff must show they have "been injured by a violation" of a CIPA provision to state a claim);[5] *supra* pp. 13–14 (explaining that Plaintiff must allege any underlying crime or tort to state an ECPA claim); Cal. Penal Code § 502(e)(1) (requiring plaintiff to show "damage or loss" to state a CDAFA claim); *supra* pp. 17–20 (California Constitution claim requires showing a privacy interest in the information and a highly offensive intrusion). Because Plaintiff lacks a reasonable expectation of privacy in her non-sensitive and non-personally identifying browsing data, each of her claims fail, and remanding the action to state court would be futile and would not be an "efficient use of judicial resources." *Bell*, 922 F.2d at 1425.

## CONCLUSION

For these reasons, UHS respectfully requests that the Court grant UHS's motion to dismiss, in its entirety, with prejudice.

---

[5] *See also* UHS's First Motion to Dismiss, ECF No. 13-1, at 6–10 (describing why Plaintiff failed to state a privacy injury to establish statutory standing under § 637.2).

Dated: July 27, 2026

**HOGAN LOVELLS CADWALADER US LLP**

By: /s/ *Vassi Iliadis*

Vassi Iliadis (SBN 296382)
James Ettinger (SBN 344292)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
vassi.iliadis@hlc.com
jay.ettinger@hlc.com

Adam Cooke (admitted *pro hac vice*)
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
adam.a.cooke@hlc.com

*Attorneys for Defendant United Healthcare Services, Inc.*